## WELLING *v.* STRICKLAND.

1. VENDOR AND PURCHASER—CONTRACTS.

In an exchange of complainants' house and lot for defendants' farm, the complainants executed a contract to pay $4,700 for the farm, part in cash and part in an installment of $1,500 at a specified date, with interest on $1,300 thereof, payable at the Mutual Home & Savings Association, with whom the parties were dealing, at $6.70 per month, together with interest on the remainder of the whole sum that should be from time to time unpaid, at the rate of six per cent. per annum. Complainants executed a deed of the house and lot to defendants, subject to certain incumbrances. Complainants defaulted in paying the interest. *Held,* that the amount of $6.70 was payable monthly as interest on the thirteen hundred dollar item, at the place named.

2. SAME—FORFEITURE—SUBLETTING.

Under a clause in such contract against subletting the farm, the complainants were not entitled to put a third person in possession of a portion of the land, giving him entire control of the crops and the division of them, and receiving pay for the house: the relation being that of landlord and tenant.

3. SAME—INSURANCE AND TAXES—DEFAULT.

Failure to pay taxes and keep the buildings insured in defendants' name, as provided by further clauses in the contract, operated as a default.

4. SAME—WASTE.

> Permitting waste, contrary to a prohibition in the contract against committing or permitting waste, was a default, where complainants' tenant allowed his stock to wander at will and the sheep girdled young fruit trees.

5. SAME—FORFEITURE—EFFECT OF NOTICE—WAIVER.

> The provisions of the land contract waiving notice to quit and of forfeiture warranted the defendants in forfeiting the contract and taking possession of the farm without any written notice, and although an insufficient written notice was served, it did not operate as a waiver, nor were the defendants restricted to the grounds of forfeiture set up in such notice.

6. SAME—EVIDENCE.

> The fact that a prior contract containing different provisions existed between the parties at the time of the execution of that in controversy is competent evidence to explain the situation and intent of the complainants and defendants in executing a new agreement.

Appeal from Shiawassee; Miner, J. Submitted January 12, 1910. (Docket No. 41.) Decided May 7, 1910.

Bill by Leonard A. Welling and Nellie M. Welling against Sarah A. Strickland and Washburn B. Strickland for the specific performance of a land contract. From a decree for complainants, defendants appeal. Reversed, and decree entered for defendants.

*O'Dell Chapman*, for complainants.

*A. A. & H. A. Ellis*, for defendants.

McALVAY, J. Complainants, who were husband and wife, owned certain real estate in the city of Grand Rapids, upon which was being erected a double house. It was incumbered by a mortgage of $2,600 to the Mutual Home & Savings Association, which had been put upon the property to obtain money to pay for building the house. There was also considerable indebtedness owing for material and labor which went into the erection of the house. Defendants, who were also husband and wife,

owned a farm in Shiawassee county, the title to which was in the name of the wife, upon which there was a mortgage of $1,400. Negotiations were opened in February, 1907, by a real estate agent of Grand Rapids with Mrs. Strickland for the exchange of this farm for complainants' property in Grand Rapids. Her son acted as agent for defendants in these negotiations. The result of these negotiations was an agreement in writing, made March 9, 1907, whereby Mrs. Strickland agreed to purchase complainants' Grand Rapids property at a price of $5,300, subject to the mortgage for $2,600, the house to be completed according to plans and specifications, and fully paid for by Welling within 30 days; she to give in exchange therefor her farm at a price of $4,700, subject to a mortgage of $1,400. Of the money realized from this $2,600 mortgage to the Home & Savings Association, there remained $148 not disbursed, and claims against complainants for material, etc., used in constructing the double house, unpaid to the amount of about $1,000. After entering into the foregoing agreement of March 9th, and before it had been fully carried out, these parties met at the office of Mr. Shepard, secretary of the Home & Savings Association, on March 23, 1907, in connection with the exchange of these properties, and a contract was drawn by him for them, and duly executed between Mrs. Strickland and complainants, in substance, as follows: She agreed to sell her farm of 136 acres to complainants for a consideration of $4,700, which complainants agreed to purchase and pay for, as follows:

"Seventeen hundred and fifty dollars down, the receipt whereof is acknowledged; $1,550 on November 1, 1907, with interest on thirteen hundred dollars thereof, payable at Mutual Home & Savings Association, at $6.70 per month, together with interest on the remainder of the whole sum that shall be from time to time unpaid, at the rate of six per cent. per annum, to be computed from April 1, 1907, and to be paid November 1, 1907. Principal or interest not paid when due shall bear interest until paid at six per cent. per annum."

The contract contained agreements on the part of complainants to keep the buildings insured for the benefit of defendant Mrs. Strickland; to pay all taxes and assessments; to commit or permit no waste or damage to the premises. Upon the full performance of all of the covenants and agreements and the full payment of the purchase price in the time and manner specified, said defendant agreed to convey the premises to them by warranty deed, except as to taxes, claims, and liens due to their acts or neglect. In case of any default or forfeiture all payments should be forfeited as stipulated damages. Complainants agreed not to assign the contract or sublet the farm or any part thereof without the written consent of said defendant. It was further agreed that complainants were to take possession April 1, 1907, and remain in possession as long as they performed the covenants and agreements of the contract, and no longer, and if at any time they violated or neglected to fulfill any of said covenants and agreements, they would forfeit all rights or claims under the contract and be liable to be removed from the premises, and notice to quit and of forfeiture were duly waived, and that at any time after such default it would be lawful for the first party to sell and convey the premises, or any part thereof, to any other person without becoming liable to complainants to refund the moneys received on the contract, or for damage on account of such sale; that time was expressly agreed as of the essence of the contract, and unless complied with in all its terms complainants should lose and be debarred of all rights, remedies, and actions both at law and in equity under said contract. It was further agreed by complainants as follows:

"Second parties assume a mortgage of $1,400, and consent that one of $1,000 to Mutual Home & Savings Association shall also cover this property, it being agreed that out of said payment of $1,550 one thousand shall be used to pay off said association mortgage."

Complainants had no means to provide for the payment

of these claims against their Grand Rapids property, and by agreement, in order to make such provision, defendant Sarah A. Strickland executed two mortgages of $1,000 each, on April 13, 1907; one covering this farm, and another covering the Grand Rapids property, both mortgages to the Home & Savings Association. The record does not show a deed of the Grand Rapids property from complainants to her, but it is evident that in order to carry out the above agreement one was given. The $1,000 realized from these mortgages, and $148 above mentioned, was left in the hands of Mr. Shepard to be paid by him on claims against the building on the Grand Rapids property as he had been authorized. The entire amount was paid out as directed. This security for $1,000 was evidently given in reliance by this defendant upon the last paragraph of the contract of March 23d, above set forth, wherein complainants consented thereto, and agreed to pay this amount to the association in discharge of this mortgage out of the first payment of $1,550.

Possession was given to complainants under this contract. They at once, as defendants claim, without their consent, sublet this farm, or a portion of it, to a man named Doyle, who brought some farm stock upon the place, among which were some sheep, which were turned into the orchard and did damage by girdling the trees. Learning of these facts, and claiming forfeiture on account of other defaults in this contract, defendants went into possession of the farm early in July, 1907. Complainants had knowledge of this on July 10th, and, on July 12th, Mr. Welling was found and served with the following written notice of forfeiture:

"GRAND RAPIDS, July 5, 1907.
"LEONARD A. WELLING and NELLIE M. WELLING,
"Grand Rapids, Michigan.

"You are hereby notified that a certain contract made the 23d day of March, 1907, between myself as first party and yourselves as second party, by which you purchased on contract [here follows a description of the farm], is hereby declared forfeited and by me will be held for

naught, you having neglected and refused to pay the interest on said contract as therein provided, and you have sublet a portion of said premises without any written consent from me and otherwise violated said contract.

"SARAH A. STRICKLAND."

Defendants retained this possession without interference by complainants until service of process of subpœna and injunction in this case on August 30, 1907. Doyle recognized their possession, and remained there occupying part of the house until in the fall of the year after defendants went in.

Before the commencement of this suit complainant Leonard A. Welling had seen the farm but twice, and had never been there over night. About 10 days after service of process on defendants, Mr. Welling, by advice of his attorney, went to the farm to move in. He was refused possession by Mr. Strickland. He then took hold of the old man, threw him down, and dragged him out into the road, and then moved his household goods into the house. A writ of forcible entry and detainer was issued on application of defendants, and pending that proceeding these parties met at the commissioner's office, where it was agreed, as complainant testifies,

"To let the matter stand, and Strickland would go on and run the farm, and I was to let him alone, and he would keep an exact account of what he paid and got off the farm. I did not understand that I was to have possession of the farm at all in any shape or manner until the case was over."

Under this agreement defendants continued in possession of the farm to abide the event of this litigation, and the proceedings were discontinued. A hearing was had, and a decree was granted in favor of complainants, adjudging:

(1) That defendant Sarah A. Strickland was not entitled to have the contract forfeited.

(2) Both parties are ordered to perform the contract.

(3) That defendants pay complainants $768.04 damages.

(4) That the $1,550, due defendants November 1, 1907,

is a subsisting claim against the premises, from which complainant is entitled to deduct $768.04 as of July 18, 1908, and the balance to be a lien on the premises to be paid within 60 days from December 31, 1908, the date of decree.

(5) That in case complainants pay said sum to defendants on or before 60 days from the filing of the decree, then defendants shall forthwith deliver up possession of the premises to complainants.

Costs were also decreed. Defendants have appealed, claiming that this decree should be reversed upon several grounds. These contentions will be considered in the order presented.

As to forfeiture:

1. **Default for Nonpayment of Interest.** Complainants by the contract of March 23, 1907, agreed to purchase this farm, and to make payments as follows:

"* * * $1,550 on Nov. 1, 1907, *with interest on $1,300 thereof payable at Mutual Home & Savings Association at $6.70 per month, together with interest on the remainder* of the whole sum that shall be from time to time unpaid, at the rate of six per cent. per annum, to be computed from April 1, 1907, and to be paid November 1, 1907. * * *"

Defendants contend that the interest on $1,300 of this $1,550 payment due November 1, was by this agreement payable $6.70 monthly at the place named. We agree with this construction as given to that clause of the above quotation. The reason for this provision clearly appears in the record. Both parties were dealing with this savings association, which makes loans upon monthly payments of interest. The $1,000 procured from it was used to pay complainants' indebtedness, and to complete the house on their property, and by agreement was secured by mortgage on this farm. The $300 was another item. Out of the November payment, $1,000 was to be paid to the association by complainants to wipe out this mortgage. The secretary testified:

"The $6.70 monthly interest was the $5.20 per month on the $1,000 mortgage to which was added the interest on 300 at 6 per cent., which would be $1.50."

In no other connection in the record is this amount of interest mentioned. The cross-examination of complainant Welling indicates that he so understood it by repeatedly saying he had instructed Mr. Shepard to pay $6.70 for the April interest. Complainants did not pay this interest as agreed, and were in default in that respect. The foregoing construction of the clause relative to the payment of interest monthly is the only construction which will make the entire paragraph quoted intelligible.

2. Subletting. The question of subletting in this case is to be determined from the evidence. That the man Doyle was at once put into possession of these premises by complainants is not disputed. He was the only person in actual possession of the house, and all of the land (except a few acres sowed with oats, and put into beets by others), from the time the transfer was made until defendants took possession early in July. There is considerable testimony as to the relation between Doyle and complainants. From the testimony of complainant Welling it appears that Doyle was in such complete possession, and had such entire control of the crops he was raising there, and the division and separation of a share of the same to the complainants, and was acknowledged by them as paying for the use of the house by looking after the place, that the relation is only consistent with that of landlord and tenant. Such relation amounted to a subletting by complainants, for which no consent was obtained, as required by the contract.

3. Nonpayment of Insurance and Taxes. The contract required complainants to keep all buildings on the place insured in the name of defendants, and in case of loss, if not mutually agreed between them to use insurance recovered to repair and rebuild, it was to be paid to defendants and indorsed as payment on the contract, and balance over, if any, to belong to complainants. Complain-

ants agreed also to pay all taxes levied against the premises. In both respects they defaulted. Defendants were obliged to pay insurance and taxes.

4. As to Committing Waste. The man Doyle was of dissolute and careless habits. He allowed his stock which he brought and kept upon the premises to wander at will. The record shows that the young trees in the orchard were girdled and destroyed by its sheep. The destruction of fruit trees is waste. *Stevens* v. *Rose*, 69 Mich., at page 270 (37 N. W. 205). Complainants were prohibited by the terms of the contract from committing or permitting waste on these premises.

5. As to Forfeiture Resulting from these Defaults. The contract contained a forfeiture clause, in case of any violation of its agreements or neglect to perform its obligations by complainants, and both notice to quit and of forfeiture were expressly waived. It is claimed that defendants must rely upon the defaults specified in the notice of forfeiture which was given, and that defaults on other grounds cannot be considered. In the case at bar defendants had gone into possession on or about the 1st of July. The tenant Doyle made no objection, and recognized their possession. Complainants had actual notice of this entry and possession on July 10th, and made no objection nor disputed defendants' rights until August 30th following, when process in this suit was served. This possession was notice to the complainants of forfeiture of the contract on their part. The service of a written notice was unnecessary by the terms of the contract, and giving such notice, if construed as insufficient, which we find unnecessary to decide, would not under these circumstances operate as a waiver. We cannot agree with complainants that the only grounds of forfeiture upon which defendants may rely are those specifically set up in the notice. We find from the record all of the grounds for forfeiture claimed by defendants, including those specified in the notice, were established by the proofs, and that defendants, at the time the bill of complaint was filed, had

been in possession of the premises, with the knowledge of complainants, for a period of 60 days, and this possession was a lawful one. Therefore, by reason of their defaults and the forfeiture of this contract, complainants were not entitled to a decree for the relief sought. Complainants insist that the first contract is not material to the issue in this case, and should not be considered. To understand the relations of these parties at the time the second contract was made, and also that they were at that time acting under the first contract, and used the money ($1,000) procured from the mortgage on the farm, it was necessary to know the terms of the first contract. Complainants' entire case depended upon their contention that they were not in default on the second contract, and that it should not be forfeited.

Having failed in establishing their case, and the condition of the pleadings not being such that the court may consider any other questions, nothing remains but to reverse and set aside the decree of the circuit court, and enter a decree in this court in favor of defendants, declaring the contract forfeited, with costs of both courts.

HOOKER, MOORE, BROOKE, and BLAIR, JJ., concurred.