ZADIGIAN *v.* GARD.

1. VENDOR AND PURCHASER—DEFAULT—WAIVER—TIME.

Although a land contract provided that time was of the essence of the contract, *held*, that vendors by accepting payments after default and by their assurances to vendee that he might have further time in which to pay up, waived the right to invoke strict performance of the contract with time considered as of the essence thereof, and purchasers of the vendors' interest in the land took it subject to vendee's rights under his contract.

2. SAME—BUYER OF VENDEES' RIGHTS UNDER SECOND CONTRACT RECOGNIZES VENDOR'S RIGHTS THEREIN.

Where plaintiff had purchased land on a contract and before such contract was fully performed and while in default thereon he sold on contract to others, defendants, by purchasing the vendee's interest in said second contract, recognized plaintiff's rights therein, and assumed, by their purchase, a relation barring them from excusing performance of their contract with plaintiff after purchasing the land from the original vendor on learning of plaintiff's default.

3. SAME—DEFAULT—WAIVER—NOTICE.

Where defendants had notice of plaintiff's desire to carry out his contract of purchase, and knew that the original vendors had accepted payment of interest beyond the date of defendant's purchase, they took the premises subject to plaintiff's rights therein, and neither they nor the original vendors could terminate plaintiff's rights without notice and reasonable opportunity afforded him to perform.

4. SAME—TENDER.

Plaintiff was within his rights in tendering to defendants the amount due upon his contract of purchase with the original vendors, and defendants should have accepted the tender, and they would still have retained their interest as vendees in the second contract.

5. SAME—FORFEITURES NOT FAVORED.

The law does not favor forfeitures, and he who plants himself upon a forfeiture must look well to where he stands.

6. SAME—DEFAULT—WAIVER—DEMAND FOR PERFORMANCE NECESSARY BEFORE FORFEITURE.

If a vendee in default is recognized by the vendor as having existing rights under the contract, the default becomes quiescent, and a valid forfeiture will have to await a new default, or at least a quickening of the old one by demand for performance of the contract and reasonable opportunity afforded such vendee to perform.

Appeal from Wayne; Marschner (Adolph F.), J. Submitted April 19, 1923. (Docket No. 132.) Decided June 4, 1923.

Bill by Sompad Zadigian against William H. Gard and another to set aside a claimed forfeiture of a land contract, and for specific performance thereof. From a decree dismissing the bill, plaintiff appeals. Reversed, and decree entered for plaintiff.

*Moloney & La Joie,* for plaintiff.

*Blain & Martz,* for defendants.

WIEST, C. J.    This is a bill to obtain relief from a
claimed forfeiture of a land contract and for specific
performance thereof.    Plaintiff purchased certain
premises from Fidel and Margaretha Jehle on August
28, 1914, on land contract, established a retail coal
dealer's business thereon, defaulted in making pay-
ments on the contract, in 1919 was given an extension
of one year, and during such year sold the premises,
on land contract, to Louis and Ida Reistman, and also
his coal business, stock of coal and equipment.    Plain-
tiff remained in default on his payments to the Jehles
and the Reistmans made default in payments to plain-
tiff under their contract.    On November 15, 1920,
plaintiff paid the Jehles $180, the interest on his land
contract up to November 28, 1920, but was still in
default on payments.    While payments were so in
default under both contracts defendants purchased
from the Reistmans their interest in the premises, re-
ceiving a quitclaim deed.

In the course of their negotiations with the Reist-
mans, defendants became advised of the ownership of
the premises by the Jehles and of the contract rights
of plaintiff.    Defendants obtained a warranty deed
to the premises from the Jehles November 18, 1920.
The Jehles gave plaintiff no notice of forfeiture, but
defendants, November 30, 1920, gave him such notice.
Within three days after receiving such notice of for-
feiture plaintiff tendered to defendants the amount
due upon his land contract, which tender the defend-
ants refused.    December 7, 1920, plaintiff gave de-
fendants notice of forfeiture of the Reistman land con-
tract, and December 15, 1920, filed the bill herein.

November 17, 1920, plaintiff, defendants, Mr. Jehle
and Mr. Reistman, met in a real estate dealer's
office.    Up to that time defendants had had no talk
with Mr. Jehle about purchasing the premises and no

talk with plaintiff. At that meeting plaintiff requested Mr. Jehle to give him four weeks' time in which to pay up and Mr. Jehle stated he would give him further time, but only by way of a new contract and upon condition that he pay $400 as bonus. Plaintiff declined to pay the demanded bonus. Defendants standing by learned that plaintiff was in default on his contract. Defendant Gard testified at the hearing:

"On that very afternoon, as soon as we found out that Zadigian could not meet his contract then we immediately went to Mr. Jehle to buy out the interest. As soon as we found out the condition of Mr. Zadigian we started negotiations to buy out his interest. That was the only thing we could do. The next day we closed the deal with Mr. Jehle. We examined the contract that Mr. Jehle had with Mr. Zadigian at that time, in order to determine the amount due on that contract. We examined it very carefully. We saw a payment had been accepted about two days before that time, from Mr. Zadigian by Mr. Jehle. We saw the interest on Mr. Zadigian's contract was paid up for ten days subsequent to the time of the purchase, it was paid to November 28th."

The contract between plaintiff and the Jehles contained the usual provision making time the essence thereof, but the Jehles, by their acts and assurances to plaintiff, waived the right to invoke strict performance of the contract with time considered as the essence thereof. Defendant's purchase from the Jehles must be held subject to such rights as plaintiff had under his contract of purchase.

Two reasons stand forth for this holding:

*First:* In dealing with the Reistmans defendants recognized rights in plaintiff paramount to existing rights in the Reistmans, and assumed, by purchase of the Reistmans' interest, a relation barring them from excusing performance of the Reistmans' contract

by an attempt to kill the ability of plaintiff to perform his part thereof.

*Second:*   They purchased from the Jehles, with full knowledge of plaintiff's desire to carry out his contract with the Jehles, knowing the Jehles had accepted payment of the interest beyond the date of their purchase and, therefore, their grantor had recognized existing rights in plaintiff under the contract.

Neither the Jehles nor defendants, under the circumstances, could terminate the contract without notice of forfeiture and reasonable opportunity afforded plaintiff to perform.

Defendants contend that they did not take an assignment of the Zadigian-Reistman contract and thus their rights to the premises, if any, did not arise until 12 days after their purchase from the Jehles and after the Zadigian interest, and through him the Reistman interests, were terminated by the notice of forfeiture and, therefore, they were not the holders of an estate subject in any way to the rights of plaintiff.   This, however, is not borne out by the evidence.

Defendants took possession of the premises under a preliminary agreement of purchase from the Reistmans at an agreed price of $3,500 for their interests. This was either late in October or along the first of November, 1920, and at that time defendants paid the Reistmans $50 upon such purchase and the deed of December 1, 1920, was no more than the consummation of such preliminary agreement.

Mr. Kinell, a real estate agent, negotiated the sale of the Reistmans' interest to defendants and informed them at the start that the Reistmans were buying the premises on land contract, that:

"These parties (defendants) learned that I had the contract for sale and they came to me and bought it;

paid me fifty dollars deposit on it.    I told them that Reistman was buying the contract from Zadigian."

Defendants admit that they learned, before they thought of purchasing the premises from the Jehles, that the Reistmans were in possession under contract of purchase with plaintiff.    They went ahead, however, with their deal with the Reistmans and the quit-claim deed, dated December 1, 1920, merely carried out their purchase of the Reistmans' interest, made binding upon them before they learned of plaintiff's default and conceived the idea of cutting off his rights by purchase from the Jehles.    Defendants paid the Jehles only the amount due them from plaintiff on the contract, and obtained the rights of the Reistmans for far less than they had paid on their contract.

The defendants, having bargained for the rights of the Reistmans under their contract with plaintiff, and having taken possession thereunder, and the matter of closing the sale merely resting at the time they purchased from the Jehles, and closed later as agreed, could not, by the course of action pursued, shed themselves of the relation and obligation they assumed toward plaintiff's rights, and duty of recognition thereof and, by their purchase from the Jehles, cut plaintiff off.

Under the evidence in the case the plaintiff was clearly within his rights in making the tender to the defendants of the amount due upon his contract of purchase with the Jehles and the defendants should have accepted the tender.    This would have left their rights in the premises as holders of the Reistman interests under the contract of purchase from Zadigian.

The law does not favor forfeitures, and he who plants himself upon a forfeiture must look well to where he stands.    It is true the law gives a vendor the benefit of remedies for defaults of a vendee, but

the vendor may waive such remedies, expressly or by implication. If a vendee in default is recognized by the vendor as having existing rights under the contract, the default becomes quiescent, and a valid forfeiture will have to await a new default, or at least a quickening of the old one by demand for performance of the contract and reasonable opportunity afforded such a vendee to awaken from the repose of imagined security. *Waller* v. *Lieberman,* 214 Mich. 428; *Fry* v. *Miller,* 220 Mich. 463; *Letinsky* v. *Smith,* 220 Mich. 465.

In the circuit the bill was dismissed. The rights of plaintiff have not been foreclosed. The defendants have not acted innocently. The decree entered below is reversed and one will be entered here permitting plaintiff to pay the defendants, within twenty days, all amounts due, with interest, upon his contract of purchase from the Jehles, and fully perform the same, and defendants shall accept such full performance and execute a deed of the premises to plaintiff; saving therein, however, their rights under the land contract between the plaintiff and the Reistmans; such contract rights to remain in full force upon payment by the defendants to plaintiff, within twenty days, of all sums due thereunder. If defendants decline to execute a deed to the plaintiff then the decree to operate as such conveyance and it may be recorded. Plaintiff will recover costs.

FELLOWS, MCDONALD, CLARK, BIRD, SHARPE, MOORE, and STEERE, JJ., concurred.