McWILLIAMS *v* URBAN AMERICAN LAND
DEVELOPMENT CO

1. Vendor and Purchaser—Land Contract—Default.
Any rights a vendee had in a contract, which was either a land contract or an extension of option to buy, were extinguished where the vendee did not even attempt to contact the vendors for a closing until after payment was several weeks past due and then the vendee only offered to close contingent on the outcome of negotiations with others, the vendors repeatedly informed the vendee after the payment's due date that they regarded the vendee to be in default, and the vendee, rather than tender payment and, if payment was refused, sue for specific performance, did nothing until 1–1/2 years after the payment's due date; an affidavit recorded by the vendee, 1–1/2 years after the due date, claiming a land contract interest in property was insufficient to retain any interest in the property.

2. Specific Performance—Tender of Performance—Equity.
A court of chancery generally will not grant specific performance unless the party seeking that remedy has tendered full performance.

3. Vendor and Purchaser—Tender—Offer to Close.
An offer to close on a land contract does not constitute tender of performance.

4. Vendor and Purchaser—Land Contract—Forfeiture.
Forfeiture of $500 paid on a contract, which was either a land contract or an option to buy, by a defaulting vendee was a reasonable cost to the vendee where the $500 had been used to keep the property off the market for six months.

---

References for Points in Headnotes
[1] 55 Am Jur, Vendor and Purchaser § 38 *et seq.*
[2, 3] 49 Am Jur, Specific Performance § 143 *et seq.*
[4] 49 Am Jur, Vendor and Purchaser § 535.
[5] 55 Am Jur, Vendor and Purchaser § 643.

5. VENDOR AND PURCHASER—LAND CONTRACT—FORFEITURE—REDEMP-
TION.

    A defaulting land contract vendee has no absolute right of
redemption; however, a court of equity has the power to
relieve the defaulting vendee from the forfeiture and to
compel specific performance by the vendor when, in the
court's judgment, to do otherwise would result in an un-
reasonable forfeiture.

Appeal from Presque Isle, Philip J. Glennie, J.
Submitted Division 3 November 4, 1971, at Grand
Rapids. (Docket No. 10214.) Decided January 18,
1972.

Complaint by Kenneth R. McWilliams and Donel-
da A. McWilliams against Urban American Land
Development Company to quiet title to land. De-
fendant counterclaimed for reformation of a land
contract and specific performance of the contract as
reformed. Title quieted in plaintiffs as to one part
of the land and specific performance granted defend-
ants. Plaintiffs appeal and defendant cross appeals.
Reversed and remanded to trial court for an order
quieting title to all property in the plaintiffs.

*Elmer L. Radka,* for plaintiffs.

*Henry, Knapp, Boyce & Yahne,* for defendant.

Before: R. B. BURNS, P. J., and LEVIN and T. M.
BURNS, JJ.

T. M. BURNS, J. On November 18, 1967, plaintiffs
granted to defendant a 90-day option to purchase "6
lots on the corner of Michigan and Fifth Street" in
Rogers City. The option provided: "Upon approv-
al of project, this option will be converted to a six-

month land contract". The total purchase price was set at $15,000.

The "project" involved was the construction by defendant of a public housing development for the elderly. The approval required was that of the Department of Housing and Urban Development and of the Rogers City Housing Commission. Upon completion of construction, the development was to be sold to the government.

On February 19, 1968, one day after the expiration of the 90-day option, plaintiffs and defendant executed a writing purporting to be a land contract for the sale of "Lots 11, 12, 13, 14, 15 of Block 24", in Rogers City. The writing acknowledged receipt by plaintiffs-vendors of $500 and provided that the balance of the $15,000 purchase price was to be paid by defendant-vendee on or before August 19, 1968. No provision was made for taking of possession by defendant prior to full payment of the purchase price. The writing, which was a standard form contract, expressly provided that there were to be no monthly payments. Paragraph 8 of the writing is a typical land contract forfeiture clause:

"If the Vendee shall fail to comply with the terms of this contract, the Vendor may take possession of said property and all the improvements thereon and treat the Vendee as a tenant holding over without permission and remove him therefrom and retain any money paid hereon as stipulated damages for non-performance of this contract, and it is hereby expressly understood and declared that time is and shall be taken as of the very essence of this contract. Notice of said forfeiture may be given by registered mail, by depositing the same in post office, addressed to Vendee at his last known address."

Because all of the signatures on the writing had not been witnessed, nor the writing acknowledged,

the Register of Deeds could not, upon defendant's request, accept the writing for filing. However, the Register of Deeds could and, on February 28, 1969, did accept for filing an affidavit signed by Carl A. Myers, on behalf of defendant, claiming a land contract interest in "Lots 11, 12, 13, 14, 15, of Block 24, Original Plat of Rodgers [*sic*] City".

At no time has defendant paid to plaintiffs any money other than one dollar for the original 90-day option and the $500, receipt of which was acknowledged by plaintiffs in the writing of February 19, 1968.

On July 3, 1969, plaintiffs filed suit to remove a cloud from their title to "Lots numbered 11, 12, 13, 14, 15 and 16 of Block 24, of the Original Plat of the Village, now City, of Rogers City". The cloud sought to be removed was the affidavit of February 27, 1969, filed by defendant. On October 30, 1969, defendant counterclaimed for reformation of the writing purporting to be a contract for the sale of the same lots and for specific performance of the contract as reformed. On June 22, 1970, the trial court submitted a written opinion denying defendant's counterclaim for reformation, but ordering specific performance of the writing as written. On August 26, 1970, judgment was entered ordering plaintiffs to transfer a warranty deed to defendant upon receipt from defendant of the sum of $14,500 plus interest at the rate of 6% to the date of judgment. Defendant was also ordered to pay any taxes due on the five lots. The balance of the principal and interest were to be paid within 30 days from entry of judgment. The judgment also quieted title to Lot 16 in the plaintiffs.

In support of their complaint to remove a cloud on title, plaintiffs urged at trial that the writing of

February 19, 1968, was a six-month extension of the original 90-day option, and that this extended option had expired on August 19, 1968. In response to defendant's counterclaim for specific performance, plaintiffs claimed that even assuming that the writing of February 19, 1968, was a land contract and not an extended option, defendant had abandoned the contract and, in the alternative, that defendant had failed to make any tender which is a prerequisite to a decree of specific performance.

Defendant responded to plaintiffs' complaint by contending that the writing of February 19, 1968, was a land contract. In support of its own counterclaim, defendant denied abandonment of the contract and claimed that its repeated offers to close constituted adequate legal tender.

In his opinion of June 22, 1970, the trial judge made the following determinations of fact: (1) the writing of February 19, 1968, was a land contract recognized as such by all parties; (2) defendant did not abandon the contract; (3) prior to August 19, 1968, plaintiffs made several requests of defendant for full payment of all moneys due; (4) although defendant made several oral offers in March and May of 1969 to pay the full purchase price, defendant never made an "actual tender of moneys due under the land contract"; (5) defendant delayed making payment until its negotiations with the Department of Housing and Urban Development and with the Rogers City Housing Commission were successfully concluded; and (6) it was the intention of plaintiffs to retain one lot, namely Lot 16, from the parcel and, therefore, there was no mutual mistake.

The trial court rejected defendant's counterclaim for reformation on the ground that any possible mistake was not mutual. He granted defendant's

request for specific performance of the contract, but only as written, on the ground that defendant had not abandoned the contract.

It is our opinion that it does not matter whether or not the writing be deemed an extension of the original option contract or a land contract. In either case, defendant has lost any rights it may have had therein.

Under the terms of the writing, payment was due on August 19, 1968. Our review of the record indicates, however, that defendant did not attempt to even contact plaintiffs for a closing until some time in September. Even then tender was not made, but defendant only made an offer to close and it is apparent that the offer was contingent on the outcome of defendant's negotiations with HUD and the Rogers City Housing Commission.

Defendant was repeatedly informed after the due date that the plaintiffs regarded the defendant to be in default. However, rather than tender payment and, if payment was refused, bring suit for specific performance, defendant did nothing until February of 1969 when the affidavit was filed claiming a land contract interest in the property.

The effect of filing the affidavit was, of course, to place a cloud on plaintiffs' title thus forcing them to bring suit to remove it. In our opinion this maneuver on defendant's part was insufficient to retain any interest in the property. If defendant wanted the property, it should have tendered payment rather than merely file an affidavit to prevent plaintiffs from selling to anyone else.

Generally, a court of chancery will not grant specific performance unless the party seeking that decree has tendered full performance. See *Sterling* v *Fisher,* 356 Mich 634 (1959). Offers to close do

not constitute legal tender. *Nedelman* v *Meininger,* 24 Mich App 64 (1970).

The effect of upholding plaintiffs' suit to remove the cloud on their title is, of course, to cause defendant to forfeit the $500 it had paid at the time the contract was entered into. However, since the $500 had been used to keep plaintiffs' property off the market for a period of six months, we find the amount of forfeiture declared in the contract to be perfectly reasonable. It was simply a reasonable cost to the defendant for keeping the property off the market for six months.

Relief from a forfeiture is discretionary. A defaulting land contract vendee (unlike a defaulting mortgagor) has no absolute right of redemption. Nevertheless, a court of equity has the power to relieve the defaulting vendee from the forfeiture and to compel specific performance by the vendor when, in the court's judgment, to do otherwise would result in an unreasonable forfeiture. *Hubbell* v *Ohler,* 213 Mich 664 (1921); *Marble* v *Butler,* 249 Mich 276, 280 (1930); *Bilandzija* v *Shilts,* 334 Mich 421 (1952); *Rothenberg* v *Follman,* 19 Mich App 383 (1969).

In the instant case the land contract served the same function as an option contract, it kept the property off the market. The amount of the forfeiture is low and represents a reasonable cost of keeping plaintiffs' property off the market. Therefore, we hold that the forfeiture was not unreasonable but was, rather, a reasonable amount of liquidated damages. It is, therefore, our opinion that the trial court should not have granted specific performance.

Reversed and remanded to the trial court for an order quieting title to all of the property in the plaintiffs.

All concurred.