HOWARD v LUD

HOWARD v ROETHER

Docket Nos. 51336, 54558, 54559. Submitted April 9, 1982, at Lansing.
—Decided August 25, 1982.

In 1965, Ross C. Howard and Frank J. Lud organized United
Commerce, Inc. (UCI), to promote the construction of the Com-
merce Center Building in Lansing. UCI issued 26,414 shares of
stock, with Howard and Lud each receiving 13,000 shares. The
remaining shares were issued to other diverse individuals. By
late 1966, Lud and several of the other shareholders concluded
it would be in their best interests to sell their stock. G. Graham
Development Corporation purchased the stock and assigned it
to Howard, who was an officer of G. Graham Development and
had a substantial interest therein. Burton Abstract and Title
Company was to be escrow agent for the transaction, releasing
stock as payments were made, on a pro rata basis. In addition,
Lud and his wife were required to personally sign and guaran-
tee a $3,500,000 construction mortgage. If this were not done,
Lud's stock sale price was to be reduced by $20,000. Construc-
tion started shortly after the closing of the stock transfer deal.
Howard thereafter sold the UCI assets to Commerce Center
Builidng (CCB), a joint venture, which agreed to pay all the
debts of UCI. Construction was completed by CCB and an
accounting was required so that CCB could pay off the debts of
UCI. Burton thereupon surrendered 13,248 shares of UCI stock
to Lud and others pursuant to a default clause in the escrow
agreement. Howard brought a suit in Ingham Circuit Court
against Lud and a separate suit against Robert H. Roether and
various other individual stockholders. The cases were consoli-

REFERENCES FOR POINTS IN HEADNOTES

[1] 17 Am Jur 2d, Contracts § 499.
[2] 5 Am Jur 2d, Appeal and Error § 839.
[3] 74 Am Jur 2d, Suretyship § 10.
[4] 17 Am Jur 2d, Contracts § 263.
[5] 69 Am Jur 2d, Secured Transactions § 639.
    Construction and effect of UCC Art 9, dealing with secured transac-
    tions, sales of accounts, contract rights, and chattel paper. 30
    ALR3d 9.

dated for trial. The trial court, James T. Kallman, J., failed to grant plaintiff the entire relief he had requested, whereupon he filed appeals in both cases. Defendants cross-appealed and moved to dismiss plaintiff's appeals on the ground that plaintiff failed to file the transcripts of the lower court proceedings. The Court granted defendants' motions and dismissed plaintiff's appeals without prejudice. Plaintiff applied for delayed appeals in both cases. Leave to appeal was granted in each case, and the appeals were consolidated. Plaintiff contends: (1) that the trial court erred in not awarding plaintiff the $20,000 credit for Lud's failure to personally obligate himself on the construction mortgage; (2) that a supplemental agreement between plaintiff and Lud in which Lud agreed to a proportionate distribution of the stock held in escrow as payments were received was binding on behalf of the other defendant shareholders who had sales agreements with plaintiff; and (3) that the trial court erred in not granting plaintiff the right to redeem the stock after plaintiff defaulted in payments. Defendant Lud's cross-appeal raises the issue of whether plaintiff's claims are barred because of fraudulent misconduct. *Held:*

1. Lud was justified in refusing to sign the construction mortgage. The contract required him to sign the mortgage in accordance with the commitment then held with the Bank of Lansing. That commitment was withdrawn and a second commitment was entered into thereafter. When the first commitment was withdrawn, Lud's obligation to sign the construction mortgage was also terminated.

2. The supplemental agreement does not purport to bind anyone other than Lud. Furthermore, Lud had no actual or apparent authority to act on behalf of some of the defendant stockholders.

3. Defendant Lud's argument that he effectively rescinded the supplemental agreement is without merit.

4. The trial court was correct in not granting plaintiff the right to redeem the stock after he defaulted in payments.

5. There was no error in the trial court's conclusion that, since Lud was aware of plaintiff's fraudulent misconduct in concealing information from the defendants, the elements of fraud were not satisfied.

Affirmed.

1. DEBTOR AND CREDITOR — SALE OF STOCK — FORFEITURE.

The law does not favor a forfeiture; therefore, in order for a purchaser of stock to claim that the seller has defaulted and

that a forfeiture has occurred thereby, the purchaser first is
required to make a demand on the seller to perform.

2. APPEAL — FINDINGS OF FACT.

The Court of Appeals will not upset a trial court's findings where
those findings turn on the credibility of witnesses and are
consistent with the evidence.

3. SURETYSHIP AND GUARANTEE — INCREASED RISK — SUBSTITUTION OF
OBLIGORS — RELEASE OF SURETY.

A surety will be released, even as against the obligee, where his
risk is materially increased by some action of the obligor, and
where a substitution of obligors occurs, such a change usually
operates to release the surety from his obligation; the rationale
for these rules is that a change in the obligation by the
substitution of obligors has the effect of creating a new contract
to which the surety never intended to become liable.

4. CONTRACTS — BUY-SELL AGREEMENTS.

The mere fact that a buy-sell agreement refers to prior buy-sell
agreements does not require a finding that the latest agree-
ment was intended to bind all of the parties who were subject
to the earlier agreements.

5. DEBTOR AND CREDITOR — COLLATERAL — UNIFORM COMMERCIAL
CODE.

The Uniform Commercial Code permits a defaulting debtor,
under certain circumstances, to redeem collateral; to invoke
this right, the debtor must tender performance of all obliga-
tions secured by the collateral as well as the expenses reason-
ably incurred by the secured party in retaking the collateral
(MCL 440.9505[2], 440.9506; MSA 19.9505[2], 19.9506).

*Fulkerson, Hudson, Moore, Bileti, Pierce & Ten-
nent, P.C.,* for plaintiff.

*Starr & Cornell,* for defendants.

Before: M. F. CAVANAGH, P.J., and R. M. MAHER
and K. B. GLASER,* JJ.

PER CURIAM. These consolidated cases arose
when plaintiff sued defendants regarding an agree-

---

* Circuit judge, sitting on the Court of Appeals by assignment.

ment for the sale of stock. Following a bench trial which failed to grant plaintiff the entire relief he had requested, plaintiff filed appeals in both cases. Defendants cross-appealed and moved to dismiss plaintiff's appeals for failure to file the transcripts of the lower court proceedings. This Court granted defendants' motions. Plaintiff's appeals were dismissed without prejudice. Plaintiff applied for delayed appeals in both cases, and leave to appeal was granted on February 23, 1981. Due to the complicated factual scenario of these cases, we will discuss the facts only as they relate to the pertinent issues on appeal.

Plaintiff's first issue concerns a 1966 sales contract between plaintiff's assignor, Graham and Associates, Inc., and defendant Lud in which Lud agreed to sell to Graham certain stock in a Michigan corporation organized to construct the Commerce Center in downtown Lansing. The agreement required Graham to make a down payment, followed by periodic payments, with the stock being held in escrow until all the necessary payments had been made. The agreement also provided that Lud and his wife were to personally execute the construction mortgage needed for the proposed building and that their failure to do so would result in a forfeiture of $20,000 of the purchase price of the stock. In 1971 Lud's shares of stock were returned to him pursuant to a default clause in the escrow agreement. Plaintiff argues that the trial court erred in not awarding plaintiff the $20,000 credit for Lud's failure to personally obligate himself on the construction mortgage.

It is well established that the law does not favor a forfeiture and that in order for plaintiff to claim that a forfeiture had occurred he was required to

make a demand on defendant Lud to perform. In *Collins v Collins*, 348 Mich 320; 83 NW2d 213 (1957), the Michigan Supreme Court quoted with approval the rule it had established in *Zadigian v Gard*, 223 Mich 147, 152-153; 193 NW 783 (1923), regarding forfeitures:

" 'The law does not favor forfeitures, and he who plants himself upon a forfeiture must look well to where he stands. It is true the law gives a vendor the benefit of remedies for defaults of a vendee, but the vendor may waive such remedies, expressly or by implication. If a vendee in default is recognized by the vendor as having existing rights under the contract, the default becomes quiescent, and a valid forfeiture will have to await a new default, or at least a quickening of the old one by demand for performance of the contract and reasonable opportunity afforded such a vendee to awaken from the repose of imagined security.' " (Citations omitted.) *Collins, supra,* 327-328.

Defendant Lud admitted that neither he nor his wife signed the construction mortgage. Lud claimed that plaintiff never demanded that he sign the mortgage; plaintiff alleged that the demand was made but that Lud refused to sign it. There was no other evidence introduced on this issue. The trial court's resolution of this matter was dependent upon its assessment of the credibility of both Lud and plaintiff since they were the only witnesses who testified regarding whether Lud had been requested to sign the construction mortgage. The trial court found that neither of the two witnesses was particularly credible. In finding that the result was a "standoff", the trial court held that plaintiff had failed to satisfy his burden of proof. The trial court is in a unique position to observe the witnesses and assess their credibility accordingly. This Court has consistently held that,

where a trial court's findings turn on the credibility of witnesses and are consistent with the evidence, we will not upset those findings. *Shields v Collins,* 83 Mich App 268, 270; 268 NW2d 371 (1978); *Warren v June's Mobile Home Village & Sales, Inc,* 66 Mich App 386, 389; 239 NW2d 380 (1976).

Even if we were to find that defendant Lud did refuse to sign the construction mortgage, it appears to us that he was justified in so doing. The contract required him to sign the mortgage in accordance with the commitment then held with the Bank of Lansing. That commitment provided for a loan of $3.5 million with an interest rate of 6-1/4%. It also provided for a closing fee of $25,000, of which $15,000 had been paid prior to the time the 1966 agreement was entered into. The commitment was withdrawn and a second commitment was entered into in April of 1967. The second commitment provided for an increased interest rate and a substantially higher closing fee.

It is a matter of general suretyship law that a surety will be released, even as against the obligee, where his risk is materially increased by some action of the obligor. 74 Am Jur 2d, Suretyship, § 34, p 35. Furthermore, where a substitution of obligors occurs, such a change usually operates to release the surety from his obligation. *Farmers Co-Operative Creamery Co v Huhn,* 241 Mich 23, 27; 216 NW 370 (1927); *Miller Industries, Inc v Cadillac State Bank,* 40 Mich App 52, 58; 198 NW2d 433 (1972). The rationale for these rules is that a change in the obligation by the substitution of obligors has the effect of creating a new contract to which the surety never intended to become liable. Here, the construction mortgage was not signed by Lud, so a suretyship contract was not

created. However, we believe the foregoing principles still apply. The increased interest rate and closing fee clearly constituted a change in the contract materially increasing Lud's possible exposure to liability. We find that Lud was required to sign the construction mortgage only in accordance with the commitment held with the Bank of Lansing. When that commitment was withdrawn, Lud's obligation to sign the construction mortgage was also terminated.

Plaintiff's second issue on appeal is that a supplemental agreement between plaintiff and defendant Lud in which Lud agreed to a proportionate distribution of the stock held in escrow as payments were received was binding on behalf of the other defendant shareholders who had sales agreements with plaintiff. Defendant Lud counters that he did not sign the agreement on behalf of the other defendants, that the other defendants were not even aware that he was signing the agreement, and that, in any event, he effectively rescinded the agreement the day after it was executed.

We find that a careful reading of the supplemental agreement demonstrates that it does not purport to bind anyone other than Lud. Although Lud authorized the release of the stock as payments were made pursuant to the two buy-sell agreements between plaintiff and the defendants, the writing does not state that it is binding on anyone other than Lud. The mere fact that the agreement refers to the prior buy-sell agreements does not require a finding that it was intended to bind all of the parties who were subject to the earlier agreements. See *Weeks v Slavik Builders, Inc*, 24 Mich App 621, 623; 180 NW2d 503 (1970), *aff'd* 384 Mich 257 (1970).

Furthermore, we find that defendant Lud had no actual or apparent authority to act on behalf of defendants Lacchia, Rogozinski, and Gadaleto. The evidence regarding Lud's lack of actual authority to represent these defendants was uncontroverted. We also find that there was no evidence to suggest that Lud had any apparent authority to act on behalf of these three defendants. See *Michigan National Bank of Detroit v Kellam,* 107 Mich App 669, 679-680; 309 NW2d 700 (1981). Although defendants Laverne and Geraldine Curtis, Roether, and Divietri gave Lud written authorization to represent them, we find that the supplemental agreement regarding the proportionate distribution of stock did not purport to bind these parties, and there was no evidence presented establishing that Lud was acting on their behalf in this transaction.

Defendant Lud's argument that he effectively rescinded the supplemental agreement is without merit. The trial court ruled that Lud's attempted rescission was untimely and that Lud lacked adequate grounds for rescission. We find no error in this decision. Lud was fully aware of any misrepresentations plaintiff may have made concerning his involvement with Graham and Associates before he, Lud, signed the agreement, and the attempted rescission was four years late. Under these circumstances, rescission was unavailable. *Dehring v Northern Michigan Exploration Co, Inc;* 104 Mich App 300, 307-313; 304 NW2d 560 (1981), *Livingston v Krown Chemical Mfg, Inc,* 50 Mich App 153, 158-159; 212 NW2d 775 (1973), *aff'd* 394 Mich 144; 229 NW2d 793 (1975).

Plaintiff's last issue on appeal is that the trial court erred in not granting plaintiff the right to redeem the stock, pursuant to MCL 440.9506; MSA

19.9506, after plaintiff defaulted in payments. Plaintiff argues that, since the repossessed stock was being held as security for plaintiff's performance, the defendants were bound by the requirements of Article 9 of the Uniform Commercial Code which requires a secured party to notify the debtor of his intent to retain the collateral in satisfaction of the indebtedness. Defendants argue that they complied with the notice requirement of Article 9 and that plaintiff failed to redeem the stock in a timely fashion thereafter.

MCL 440.9503; MSA 19.9503 provides in part:

"Unless otherwise agreed a secured party has on default the right to take possession of the collateral."

It is clear under the sales agreements that the defendants were entitled to take possession of the stock upon plaintiff's default. Section 9506 of Article 9 permits the debtor to redeem the collateral before the obligation is discharged under § 9505(2). However, to invoke that right, the debtor must tender performance of all obligations secured by the collateral as well as the expenses reasonably incurred by the secured party in retaking the collateral. MCL 440.9506; MSA 19.9506; *Rogers v Associates Commercial Corp*, 129 Ariz 499; 632 P2d 1002 (1981). Plaintiff offered no evidence that he has complied with the tender requirement and, thus, redemption is unavailable. Furthermore, we find that plaintiff has waived his right to redemption. Plaintiff did not make a claim for redemption until the time of trial in 1979, despite the fact that the defendants' answer to plaintiff's complaint in 1972 and their answer to his amended complaint in 1975 gave plaintiff written notice that the defendants intended to retain possession of the stock pursuant to the default provision in the contract.

We find that the trial court was correct in not granting plaintiff the right to redeem the stock.

Defendant Lud's cross-appeal raises the issue of whether plaintiff's claims are barred because of his fraudulent misconduct. Lud's claim of fraud is based upon the assertion that plaintiff failed to disclose his interest in the purchasing corporation, Graham and Associates, Inc., and that he fraudulently concealed that information from the defendants. The trial court found that Lud knew that plaintiff was "involved up to his ears". Again, a trial court's findings of fact regarding the credibility of witnesses will not be upset unless found to be clearly erroneous. *Shields, supra; Warren, supra.* We find no error in the trial court's conclusion that, since Lud was aware of plaintiff's fraudulent misconduct in concealing information from the defendants, the elements of fraud were not satisfied.

Affirmed. Costs to defendants in Docket No. 54559, and no costs in Docket No. 51336 and Docket No. 54558, neither party having prevailed in full.