**In re FRANK KUNIK FARMS, INC., Debtor.**

**Bankruptcy No. 87–09503.**

United States Bankruptcy Court, E.D. Michigan, N.D.

June 20, 1988.

Dennis M. Haley, Flint, Mich., for debtor.

Michael C. Reinert, Saginaw, Mich., for Second Nat. Bank of Saginaw, trustee of Melvin R. Price Trust.

## MEMORANDUM OPINION REGARDING SECOND NATIONAL BANK'S MOTION FOR RELIEF FROM STAY AND OBJECTION TO CONFIRMATION OF PLAN

ARTHUR J. SPECTOR, Bankruptcy Judge.

The underlying question in these contested matters is whether, at the time the debtor filed its Chapter 11 petition for relief, it owned any interest in the lands in question. The parties have stipulated to the facts, so these contested matters present solely issues of law.

■ On February 11, 1977, Melvin R. Price sold 345.2 acres of vacant farmland to Frank Kunik Farms, Inc., a Michigan corporation ("the debtor"), on a land contract. The intricacies of land contract law in Michigan were exhaustively addressed in *In re Carr,* 52 B.R. 250, 13 C.B.C.2d 640 (Bankr.E.D.Mich.1985) and *In re Britton,* 43 B.R. 605, 11 C.B.C.2d 1455 (Bankr.E.D. Mich.1984).[1] The contract provided in paragraph eight as follows:

If Buyer shall fail for Thirty (30) days to make any payment or perform any agreement herein contained or shall breach any of the covenants herein contained, Seller may at any time after such breach or failure, at his election, declare the full amount remaining unpaid on said purchase price together with unpaid interest, taxes and insurance premiums, to be immediately due and payable. The Seller may further, at his option, at any time after such failure, consider and treat this contract as void, and may retain whatever sum has been paid by Buyer thereon, and all improvements made on said premises, and may consider and treat Buyer as their tenants, holding over without permission after the expiration of said 30 day term, and may take immediate possession of the said premises and remove Buyer or any person holding under them therefrom, and may sell and convey the said lands and deliver possession thereof to any other person without liability to Buyer therefor.... NOTICE TO QUIT AND OF FORFEITURE ARE EACH HEREBY WAIVED.

The vendor's interest in that contract is now held by Second National Bank of Saginaw as trustee for the Melvin R. Price Trust. When the balloon payment came due on March 1, 1987, the debtor proved unwilling or unable to pay the $408,824.36 balance, plus the interest from March 1, 1985 to March 1, 1987 of $57,235.41. The vendor sent the debtor a written Notice of Forfeiture on April 2, 1987. The debtor failed to pay the balance due within the statutory 15–day period. *See In re Carr,* 52 B.R. at 252. Thereafter, on May 19, 1987, the vendor commenced an action for summary proceedings to recover possession of premises in the appropriate state district court. The premises are still unimproved. Before those proceedings could be concluded, the debtor filed its petition for relief. Neither parcel showed evidence of

---

**1.** In *Britton,* this Court held that under Michigan law, a land contract vendor "retains title as a lien on the property (sold) to secure payment of the purchase price." 43 B.R. at 607, 11 C.B.C. 2d at 1457. Therefore, a vendor is a secured creditor and his claim is subject to the same treatment accorded other secured claims in bankruptcy proceedings, i.e., bifurcation of the claim into secured portion and unsecured portion, with the result that the secured claim is frequently worth no more than the fair market value of the collateral.

debtor's possession at the time the bankruptcy was filed.

The Trust filed a motion for relief from the automatic stay early in this case, alleging "cause" under § 362(d)(1).[2] Because of the need for extensive briefing, it waived the provision of 11 U.S.C. § 362(e) that the stay is automatically lifted upon the expiration of 30 days after the conclusion of the preliminary hearing. *See In re Roberts,* 68 B.R. 1004, 15 B.C.D. 563, 16 C.B.C.2d 498 (Bankr.E.D.Mich.1987). In the meantime, while this contested matter was on reserve decision, the debtor filed its plan of reorganization. The plan proposes to utilize 11 U.S.C. § 506(a) to split the Trust's claims into secured and unsecured claims based upon the value of the real estate. Specifically, the plan treats the Trust's claim as secured to the extent of $304,804.99 and unsecured as to the remainder. The secured claim would be paid in 20 semi-annual payments, amortized at 10% interest per annum over a 25–year term, with a balloon due on January 15, 1998. The unsecured claim would be paid 10% of its face amount at the rate of 1% per year. For the same reasons that it argued in support of its motion for relief from the stay, (as well as others which are not relevant to this opinion) the Trust objects to the confirmation of this plan. This opinion shall dispose of both the motion and the objection which relate to this specific issue.

The Trust's principal argument is that before the plan may cram down its secured claims, the debtor's conditional right to receive deeds to the premises must first be reinstated. The Trust asserts that by the provisions of paragraph eight of its land contract, the contract was forfeited upon the debtor's breach at its option and that no formal notice was necessary to effectuate it. Since it exercised its option to forfeit, the Trust's position is that the estate retains no interest in the premises. Alternatively, it claims that its land contract was forfeited 15 days after the Notice of Forfei-

ture was mailed to the debtor as the debtor failed within that time to cure the default. Therefore, it argues that the debtor had no interest in the premises its settlor sold. The Trust's theory is that a vendee's right to receive and the vendor's duty to convey a full legal fee interest in property sold by land contract is found only in the land contract itself. As a result, the forfeiture of the land contract terminates any duty the vendor might have had to transfer full title to the vendee. It claims that although in *Carr* we held that in order to effectuate the beneficent purposes of Chapter 13 a debtor may utilize federal law to extend the redemption period provided under state land contract forfeiture law, even there the purpose of the extension was merely to allow the debtor to reinstate the otherwise forfeited land contract. Carrying over the same logic to this scenario, the Trust argues that

> Although the land contract may be reinstated by the debtor in possession after the forfeiture, reinstatement must occur by curing of the breach which precipitated the forfeiture. In this case it was the failure of the debtor to comply with the balloon clause and failure to pay property taxes which precipitated the land contract forfeiture. Therefore, the only way the debtor in possession can reinstate the forfeited land contract is for it to pay the sums that are due movant pursuant to the balloon clause of the contract and the back property taxes. As the debtor in possession has failed to do so nor has it offered to do so, the automatic stay should be lifted to allow movant to obtain its Judgment for Possession and eventual Writ of Restitution.

Brief of Melvin R. Price Trust dated September 28, 1987.

The debtor responds that notwithstanding the terms of paragraph eight in the form of land contract utilized, such is simply not the law of Michigan: notice of

---

**2.** Originally, the Trust also alleged grounds under § 362(d)(2). Although the debtor concedes that the estate has no equity in either parcel, it strongly disputed the allegation that the properties are not essential to its successful reorganiza-

tion. As the parties and the Court agree that the controlling question in the case is legal, and embodied within the issue of "cause" under § 362(d)(1), neither trial nor argument of § 362(d)(2) was conducted.

forfeiture is required.[3] It further maintains that under Michigan law, the only way a vendor under a land contract may obtain clear title and possession of the premises sold is by institution of some form of court action—either a foreclosure or an action for summary proceedings to recover possession of premises. Since the Trust did not complete a foreclosure sale, *In re Glenn,* 760 F.2d 1428 (6th Cir.1985), and does not hold an unredeemed judgment for possession after forfeiture of land contract, *In re Carr, supra,* the land contract survives and no "reinstatement" is necessary.

■ The debtor also argues that reinstatement of the land contract is unnecessary as this case was filed under the provisions of Chapter 11 of the Bankruptcy Code and not Chapter 13. The debtor points out that in *Carr,* the debtor had to first reinstate the land contract because there the plan was dealing with a land contract on the debtor's principal residence and § 1322(b)(2) denied him the power to modify the rights of a holder of a secured claim on real property that was his principal residence. Here, however, since there is no Chapter 11 analogue to § 1322(b)(2), and since the property in question is not the debtor's principal residence, the debtor is free to modify the rights of the secured

creditor holding a lien on this real property. Reinstatement, the debtor maintains, is necessary only when the debtor must abide by all of the terms and conditions of the land contract. Here, however, where modification is permitted, the plan may properly rewrite all the terms of the contract so long as the secured creditor receives the present value of its secured claim while retaining a lien on the property in question. Since the plan proposes this, the plan should be confirmed over the Trust's objection. We agree with this analysis.

However, if the Trust's basic premise is correct—if, as it argued, the land contract in question were forfeited fully and legally when the debtor failed to pay the full balance due either when the balances came due or within the 15 day period provided by the Trust's notice of forfeiture—then the bankruptcy estate has no property interest in the land in question and so cannot force the Trust to convey a deed no matter what the debtor proposes to pay.

■ Although the parties vociferously argued the question of whether self-help (i.e., non-judicial) forfeiture still exists in Michigan, we need not decide this issue.[4] For even if the theory and procedure still exist in Michigan jurisprudence, we hold

---

3. The common law provides that notice of forfeiture may be waived. *Balesh v. Alcott,* 257 Mich. 352, 241 N.W. 216 (1932); *Welling v. Strickland,* 161 Mich. 235, 126 N.W. 471 (1910); *Miner v. Dickey,* 140 Mich. 518, 520–521, 103 N.W. 855 (1905) *(dictum ).* Whether the common law has been overruled by the enactment in 1972 of the Summary Proceedings to Recover Possession of Premises Act, Mich.Comp.Laws § 600.5701 *et seq.;* Mich.Stat.Ann. § 27A.5701 *et seq.,* and the *dictum* in *Gruskin v. Fisher,* 405 Mich. 51, 273 N.W.2d 893 (1979) need not be decided. *See* n. 4 *infra.* Michigan law provides that even if *notice* of forfeiture is waived, *forfeiture* in fact must occur. The vendor's mere belief that the contract has been forfeited is insufficient. Some "positive act" must accompany this belief to make it effective. *Balesh,* 257 Mich. at 355, 241 N.W. 216. Since we hold that no such positive act accompanied the Trust's subjective alleged belief that forfeiture occurred, whether the common law on this issue continues is irrelevant to the decision of this case.

4. Self-help forfeiture was well-established at common law. *Emmons v. Easter,* 62 Mich.App. 226, 233 N.W.2d 239 (1975); *McWilliams v. Urban American Land Development Co.,* 37 Mich. App. 587, 194 N.W.2d 920 (1972); *Rothenberg v. Follman,* 19 Mich.App. 383, 172 N.W.2d 845 (1969). The debtor relied on *dictum* in *Gruskin v. Fisher, supra,* which seems to indicate that judicial forfeiture is now the only way of effectuating it. However, the Trust countered with *Durda v. Chembar Development Corp.,* 95 Mich. App. 706, 712, 291 N.W.2d 179 (1980), which rejected the *dictum* in *Gruskin.* They also cited Deems, Turvo, *Michigan Real Estate Sales Transactions,* p. 408 (Institute for Continuing Legal Education, 1983), a treatise published subsequent to *Gruskin,* which teaches the continued vitality of non-judicial forfeiture in appropriate cases. *Also see* Cameron *Michigan Real Property Law,* Vol. 1, pp. 542–544 (Institute for Continuing Legal Education, 1985).

If a case can be decided without resolving an unsettled question of state law, a federal court should be reluctant to declare state-created rights or remedies.

that the Trust did not in fact avail itself of this remedy.

It is a commonplace that the law abhors a forfeiture. *Collins v. Collins*, 348 Mich. 320, 83 N.W.2d 213 (1957); *Bilandzija v. Shilts*, 334 Mich. 421, 54 N.W.2d 705 (1952); *Hull v. Hostettler*, 224 Mich. 365, 194 N.W. 996 (1923); *Zadigian v. Gard*, 223 Mich. 147, 152–153, 193 N.W. 783 (1923); *Howard v. Lud*, 119 Mich.App. 55, 58, 325 N.W.2d 623 (1982). What this phrase means in practice is that courts should seek to avoid determining that a forfeiture has occurred if there is any principled way to do so. *See generally Moore v. Bunch*, 29 Mich.App. 498, 185 N.W.2d 565 (1971); 30 C.J.S. *Equity* § 56 (1965). This task is not difficult to perform in this case.

The law requires some positive act by the vendor manifesting his intention to rescind or forfeit the contract. Acts evincing an unmistakable intent to rescind amount to an election to rescind, as for instance, the bringing of an action of trespass to try title, a recovery of the land by action brought for that purpose, or a sale of the property to a third party. *Balesh v. Alcott*, 257 Mich. 352, 355, 241 N.W. 216 (1932); *Hupp Farm Corp. v. Neef*, 294 Mich. 160, 292 N.W. 689 (1940); *Maday v. Roth*, 160 Mich. 289, 125 N.W. 13 (1910); *Miner v. Dickey, supra; Sparling v. Bert*, 1 Mich.App. 167, 171, 134 N.W.2d 840 (1965).

Here, the Trust did not act as if it considered the land contract fully and finally forfeited as a matter of law and that it had full title. By filing an action for summary proceedings to recover possession of premises, the Trust bought into a procedure which allowed the vendee an extended period of time during which the vendee still maintains title to, as well as possession of the premises. During the pendency of such litigation, until the statutory redemption time has expired, the vendor could not convey good title to a purchaser with notice of the proceedings, whereas the vendee could clearly sell good title to the property

to another, albeit subject to the pre-existing lien of the vendor. "Unlike a foreclosure sale, ... the forfeiture judgment does not terminate the parties' rights under the contract." *Carr*, 52 B.R. at 254. "If a vendee in default is recognized by the vendor as having existing rights under the contract, the default becomes quiescent, and a valid forfeiture will have to await a new default ...". *Zadigian v. Gard, supra; quoted in Collins v. Collins*, 348 Mich. at 328, 83 N.W.2d 213, *and Howard v. Lud*, 119 Mich.App. at 59, 325 N.W.2d 623. The Trust's filing of a summary proceedings action was not an act which clearly and unequivocally manifested its belief that it now had full legal title. Therefore, we hold that the Trust's land contract was not forfeited in the true sense of the term.

■ Since the land contract was not forfeited, there is no need to "reinstate" it. The status of the Trust's interest is legally no different from that of any other creditor holding a matured debt secured by collateral worth less than the balance due. Accordingly, the debtor has the ability to utilize § 1129(b) of the Bankruptcy Code to cramdown its plan over the Trust's objection.

For these reasons we will overrule the Trust's objection to confirmation of the plan and deny its § 362(d)(1) motions for relief from the stay.[5] An order consistent with this opinion has been entered contemporaneously herewith.

---

5. The Trust's § 362(d)(2) motion for relief from the stay may be re-noticed for hearing unless the debtor's amended plan is confirmed (aside from the other objections raised by the Trust, objections to confirmation filed by other creditors are pending as of this writing), in which case it is moot.