LUD v HOWARD

Docket Nos. 84156, 84292. Submitted April 8, 1987, at Lansing.
Decided July 20, 1987. Leave to appeal applied for.

Frank J. Lud and Ross C. Howard formed a corporation in June,
1965, called United Commerce, Inc. (UCI) to construct an office
building in downtown Lansing. Together, Lud and Howard
owned approximately ninety percent of the stock in the corpo-
ration. The remaining approximately eleven percent of the
stock was owned by other diverse individuals (sellers). Lud and
some of the sellers contracted to sell their stock to Graham &
Associates, Inc. The other sellers contracted to sell their shares
to G. Graham Development Company. Those shares were
turned over to Burton Abstract & Title Company to be held in
escrow, and Burton was to release stock as payments were
made, on a pro rata basis. The balance of the payments were to
be made when the building was completed, and the contract
terms gave the purchasers the right to vote the stock as long as
the contracts were not in default. If there was a default, the
stock was to be returned to Lud and the sellers. Further, the
purchasers of the stock were to obtain a builder and pay all
charges and fees as they became due in connection with the
mortgage and financing for the building. The stock sale agree-
ments were assigned to Howard, who was an officer of G.
Graham Development Company and had a substantial interest
therein. UCI began construction of the building, but did not
complete it. Howard and some other individuals formed a joint
venture, Commerce Center Building (CCB), which was to acquire
all the assets of UCI and complete the building. CCB did pur-
chase the assets of UCI and agreed to assume the liabilities of
UCI, including the payments to be made to Lud and the sellers
under the stock sale agreements. The building was completed
in 1970 and CCB began making payments to Lud and the
sellers. CCB paid approximately $45,000 to Lud and the sellers,

REFERENCES

Am Jur 2d, Corporations §§ 2243 et seq.; 2608 et seq.
Am Jur 2d, Judgments §§ 415 et seq.; 518 et seq.
See the annotations in the Index to Annotations under Corporate
Stock and Stockholders.

then defaulted. Lud and the sellers retrieved their stock from the escrow agent. Howard then filed suit against Lud and the sellers in Ingham Circuit Court for specific performance of the stock sale agreement. The court, James T. Kallman, J., ordered specific performance of Lud's contract to sell, but refused to order specific performance by the sellers. As a result, Howard held 88.73 percent of the shares in UCI, and the sellers held 11.27 percent. The Court of Appeals affirmed, 119 Mich App 55 (1982). Lud and the sellers then filed suit against Howard and others in Ingham Circuit Court to vacate CCB's acquisition of UCI's assets on a number of grounds, including claims that as shareholders of record of UCI, they were entitled to but did not receive notice of the meeting at which UCI transferred its assets to CCB, that there was not a quorum of disinterested directors at the meeting, that Howard lacked authorization from UCI to execute the asset transfer contract, and that Howard breached his duty of loyalty by failing to disclose his involvement with G. Graham Development Company and in the transfer of assets from UCI to CCB. The court, James T. Kallman, J., in ruling on pretrial motions held that "plaintiffs' ownership of [eleven] percent of UCI's stock flowed through the corporate shells to the existing joint venture, Commerce Center Building." Trial was held on the limited issue of the date the stock would be valued and a determination of the value of the stock at the time. The court reiterated its holding that the sellers' 11.27 percent ownership of UCI stock had transformed into an equal percentage ownership of CCB stock and held that the date of valuation would be March 24, 1980, the date of its order in the specific performance suits. The defendants, split into two groups, filed separate appeals by leave granted. The appeals have been consolidated.

The Court of Appeals *held:*

1. The trial court erred in holding that the sellers' 11.27 percent interest in UCI was transformed into 11.27 percent interest in CCB. A more equitable remedy is to award the sellers the value of their UCI shares according to the purchase agreements. The sellers would then be in the position they would have been in had the contracts been performed. Remand is necessary for a determination of the value of the UCI shares at the time of the agreements.

2. Defendants' contention that the sellers could not receive individual relief because this was a shareholder's derivative action is rejected. This was not solely a derivative action and,

even if it had been, relief to the individual shareholders is not precluded.

3. Plaintiffs' suit is not barred by either res judicata or collateral estoppel.

4. The fact that the trial court did not state its findings of fact and conclusions of law when it rendered its decision does not require reversal. In rendering its opinion, the court incorporated its earlier detailed findings of fact and conclusions of law. Furthermore, the requirement that a court shall find the facts specially and state separately its conclusions of law does not apply to a court's ruling on a motion for summary disposition.

Reversed and remanded.

1. CORPORATIONS — STOCK — TRANSFORMATION OF STOCK.

Shares of stock of one corporation generally are not automatically transformed into shares of stock of equal value in another corporation when the second corporation purchases the assets and assumes the liabilities of the first corporation.

2. CORPORATIONS — STOCKHOLDER'S DERIVATIVE ACTIONS — REMEDIES — INDIVIDUAL STOCKHOLDERS.

The general rule that recovery in stockholders' derivative actions accrues to the corporation is not inflexible nor without exception; the courts may tailor the relief granted to fit the particular case, and in some instances, direct relief to the stockholders may be allowed, although, in such cases, only to those who are shareholders at the time of the distribution.

3. ACTIONS — DEFENSES — RES JUDICATA.

The doctrine of res judicata does not apply where the matter contested in the second action was not and could not have been litigated in the first action and the defendants involved in the second action were not involved in the first action.

4. ESTOPPEL — JUDGMENTS — COLLATERAL ESTOPPEL.

Collateral estoppel applies only where the same ultimate issues underlying the present action were involved in a previous action between the parties and the parties had a full opportunity to litigate the ultimate issues in the former action.

5. ESTOPPEL — JUDGMENTS — COLLATERAL ESTOPPEL.

Collateral estoppel applies only where there is mutuality of estoppel; mutuality of estoppel is present if both litigants in the second suit are bound by the judgment rendered in the first suit.

6. COURTS — FINDINGS OF FACT — CONCLUSIONS OF LAW — SUMMARY
   DISPOSITION — COURT RULES.
   The requirement that a court shall find the facts specially and
   state separately its conclusions of law does not apply to a
   court's ruling on a motion for summary disposition (MCR
   2.517[A]).

*Farhat, Story, Panek, Tyler & Kraus, P.C.* (by
*Chris A. Bergstrom, Leo A. Farhat* and *H. James
Starr*), for plaintiffs.

*Fulkerson, Hudson, Bileti, Pierce & Tennent,
P.C.* (by *George J. Fulkerson* and *Jeffrey L. Hud-
son,* of counsel), for Ross C. Howard, Sally J.
Howard and United Commerce, Inc.

*Foster, Swift, Collins & Coey, P.C.* (by *John L.
Collins* and *Philip T. Carter*), for David Jassy and
Leslie R. Schmier.

Before: M. J. KELLY, P.J., and HOOD and E. F.
OPPLIGER,* JJ.

PER CURIAM. In this consolidated appeal, defen-
dants appeal from a November 6, 1984, order of
the Ingham Circuit Court granting plaintiffs an
11.27 percent interest in the Commerce Center
Building joint venture in Lansing. We reverse.

In June, 1965, plaintiffs and defendant Ross C.
Howard formed a corporation called United Com-
merce, Inc. (UCI) to construct an office building in
downtown Lansing. Plaintiff Lud and Howard to-
gether owned almost ninety percent of the stock in
the corporation, and the remaining plaintiffs, as
minority shareholders, owned approximately
eleven percent. UCI obtained a ninety-nine-year
lease on the construction site and made arrange-
ments for construction and long-term mortgage

---

* Circuit judge, sitting on the Court of Appeals by assignment.

financing. On November 1, 1966, plaintiffs Lud, Curtis, DiVietri, and Roether contracted to sell their shares to Graham & Associates, Inc. On March 2, 1967, the remaining plaintiffs contracted to sell their shares to G. Graham Development Company. The stock sale agreement was closed in May, 1967, with a $30,000 down payment. The shares were turned over to Burton Abstract & Title Company to be held in escrow, and Burton Abstract was to release stock as payments were made, on a pro rata basis. The balance of the payments were to be made when the building was completed. The contract terms gave the purchasers the right to vote the stock as long as the contracts were not in default. If there was a default, the stock was to be returned to plaintiffs. The purchasers of the stock were to obtain a builder and pay all charges and fees as they became due in connection with the mortgage and financing for the building. The stock sale agreements were assigned to Howard, who was an officer of G. Graham Development Company and had a substantial interest therein. UCI began construction of the building, but did not complete it.

In February, 1968, defendants Howard, Leslie R. Schmier, David Jassy, Samuel Linden, Barney Katzman, Joseph S. Radom, Wanda B. Statszewski, and Mark S. Weisberg formed a joint venture, Commerce Center Building (CCB). CCB was to acquire all the assets of UCI and complete the building. On February 23, 1968, CCB purchased the assets of UCI and agreed to assume the liabilities of UCI, a portion of which were the payments to be made to plaintiffs under the stock sale agreements. At that time, Howard owned a majority of the stock of UCI and, pursuant to the assignment, held the stock sale contracts for the remainder of the stock.

The building was completed in 1970 and, as required by the terms of the stock sale agreements, ccb began making payments to the selling stockholders. After paying approximately $45,000 to the stockholders, ccb defaulted, and plaintiffs retrieved their stock from the escrow agent. Subsequently, Howard filed suit against plaintiffs for specific performance of the stock sale agreements. On March 24, 1980, the trial court ordered specific performance of Lud's contract to sell, but refused to order specific performance by the remaining plaintiffs. As a result, Howard held 88.73 percent of the shares in uci, and plaintiffs held 11.27 percent. On appeal, this Court affirmed. *Howard v Lud,* 119 Mich App 55; 325 NW2d 623 (1982).

While that appeal was pending, plaintiffs commenced this action to vacate ccb's acquisition of uci's assets on a number of grounds, including claims that as shareholders of record of uci, they were entitled to but did not receive notice of the meeting at which uci transferred its assets to ccb, that there was not a quorum of disinterested directors at the meeting, that Howard lacked authorization from uci to execute the asset transfer contract, and that Howard breached his duty of loyalty by failing to disclose his involvement with G. Graham Development Company and in the transfer of assets from uci to ccb. Ccb and the remaining defendants in this case were not parties to Howard's specific performance action.

Before this Court's decision in the specific performance cases, plaintiffs moved for partial summary judgment and for appointment of a receiver, and defendants moved for accelerated judgment or, in the alternative, for summary judgment. The court denied both motions on March 5, 1982. Following release of this Court's decision in the specific performance cases, plaintiffs and defendants

renewed their motions, and on August 18, 1983, the court entered an opinion and order again denying the motions. In its opinion, as amended by the order, the court stated:

> On March 24, 1980, this Court held that plaintiffs owned approximately eleven percent (11%) of UCI's stock as of April 1971, and the Court of Appeals agreed. Just as plaintiffs could not have blocked the sale, the defendants cannot have divested the plaintiffs of their ownership of UCI stock. This Court is satisfied that plaintiffs' ownership of 11 percent of UCI's stock flowed through the corporate shells to the existing joint venture, Commerce Center Building.

The court then set the matter for trial for August 14, 1984, limited to the issue of the date plaintiffs' stock would be valued and a determination of the value of the stock at the time. However, on the trial date, the court repeated its earlier holding that plaintiffs' 11.27 percent ownership of UCI stock had transformed into an equal percentage ownership of CCB stock. The court then stated that the date of valuation would be March 24, 1980, the date of its order in the specific performance suits. On November 6, 1984, the court entered an order incorporating its August 14, 1984, ruling.

In Docket No. 84156, defendants Jassy, Schmier, Linden, Katzman, Radom, Statszewski, Weisberg, and CCB sought leave to appeal the November 6, 1984, order. In Docket No. 84292, defendants Ross and Sally Howard and UCI sought leave to appeal the same order. Leave to appeal was granted on October 10, 1985, and the appeals were consolidated.

In both appeals, defendants claim that the trial court erred in finding that plaintiffs are entitled to

an 11.27 percent interest in CCB and that the interest should be valued as of March 24, 1980. Because we feel that this award is equitably and legally unjustifiable, we agree.

In equity cases, this Court reviews de novo but we will not reverse the trial court's decision unless we are convinced that the court's findings are clearly erroneous or that we would have reached a different result had we occupied the court's position. *Calvary Presbyterian Church v Presbytery of Lake Huron,* 148 Mich App 105, 109-10; 384 NW2d 92 (1986), lv den 425 Mich 863 (1986). In its order, the court stated that "the defendants cannot have divested the plaintiffs of their ownership of UCI stock." However, defendants did not "divest" plaintiffs of their UCI shares. Plaintiffs had sold those shares under the 1966 and 1967 sales agreements. Under those agreements, Howard held the voting rights of the shares so long as there was no default on the contracts. At the time the assets of UCI were transferred to CCB, there was as yet no default. The sale of the assets in no way affected the UCI shares, which remained subject to the sales agreements. The court's order does not explain how plaintiffs' 11.27 percent interest in UCI may be transformed into an 11.27 percent interest in CCB. We find no factual or legal basis for the trial court's action. It is inequitable to transform the percentage of plaintiffs' shares in UCI into the value of the equivalent percentage of CCB, as the CCB joint venturers added capital and risk to complete the building and make it a going, profitable business. We feel that a more equitable remedy is to award plaintiffs the value of plaintiffs' UCI shares according to the 1966 and 1967 agreements. Plaintiffs would then be in the position they would have been in had the contracts been performed. We reverse on this issue and remand to the trial

court for a determination of the value of plaintiffs' UCI shares at the time of the agreements.

Defendants in both appeals also claim that plaintiffs may not receive individual relief because this was a shareholder's derivative action. However, we note that plaintiffs' action, despite being termed a shareholder's derivative action by defendants, was not solely a derivative action. In plaintiffs' second amended complaint, plaintiffs stated:

> 2. Plaintiffs bring this action as shareholders of Defendant United Commerce, Inc., *on behalf of themselves and all other shareholders of United Commerce, Inc. similarly situated* and in the right of United Commerce, Inc. [Emphasis added.]

Even if this were strictly a shareholder's derivative action, relief to the individual shareholders is not precluded. 19 Am Jur 2d, Corporations, § 2467, pp 296-297 states:

> Ordinarily, recovery in a stockholder's derivative action will run in favor of the corporation and not the individual plaintiff, although the courts may grant the stockholders an accounting. In most cases the shareholders gain only indirectly. . . .
>
> However, the general rule that recovery in stockholders' derivative actions accrues to the corporation is not inflexible nor without exception. The courts may tailor the relief granted to fit the particular case, and in some instances, direct relief to the stockholders may be allowed, although, in such cases, only to those who are shareholders at the time of the distribution.

In the instant case, plaintiffs had requested that the February 23, 1968, sale of assets be set aside. The court refused to do so. Thus, relief for the corporation, UCI, was unavailable. Under these circumstances, even though plaintiffs cannot gain

the relief they sought on behalf of the corporation, that does not mean that the wrong that they may have suffered as individuals is without remedy. See *Brachman v Hyman,* 298 Mich 344, 350; 299 NW 101 (1941).

In Docket No. 84292, defendants claim that plaintiffs' suit is barred by res judicata or collateral estoppel and should have been dismissed by the trial court, because in the earlier specific performance suit by Howard, which was affirmed by this Court, plaintiffs' allegations of fraud and improper conduct were litigated and decided adversely to plaintiffs. Defendants point out that, in one of the answers to Howard's complaints, plaintiffs had alleged that they had been fraudulently induced by Howard to sell their stock. The trial court did not find fraud such as would bar Howard's suit. Thus, argue defendants, the instant suit, in which plaintiffs allege fraud, should be barred.

The doctrine of res judicata bars a litigant from relitigating a claim when (1) the former action was decided on the merits, (2) the matter contested in the second action was or could have been decided in the first, and (3) the two actions are between the same parties or their privies. *Admiral Merchants Motor Freight, Inc v Dep't of Labor,* 149 Mich App 344, 350; 386 NW2d 193 (1986), lv den 426 Mich 866 (1986). In the instant case, elements (2) and (3) were not met. The specific performance cases were brought by Howard against Lud and the other selling plaintiffs for specific performance of the stock sale agreements. The instant case was brought by the selling stockholders against Howard, the two corporations, and various other defendants, to set aside the sale of assets from UCI to CCB. The propriety of the sale of assets was not, and could not have been, litigated in the first action. In addition, the additional defendants were

not involved in the first suit. Thus, res judicata cannot apply.

The doctrine of collateral estoppel was discussed by this Court in *Stolaruk Corp v Dep't of Transportation,* 114 Mich App 357, 362; 319 NW2d 581 (1982):

> In order for collateral estoppel to apply, the same ultimate issues underlying the first action must be involved in the second action. The parties must also have had a full opportunity to litigate the ultimate issues in the former action. *Fifield v Edwards,* 39 Mich 264 (1878). Finally, collateral estoppel only applies where there is mutuality of estoppel. Mutuality of estoppel is present if both litigants in the second suit are bound by the judgment rendered in the first suit. *Braxton v Litchalk* [55 Mich App 708; 223 NW2d 316 (1974)] *supra,* 720; *Howell v Vito's Trucking & Excavating Co,* 386 Mich 37, 42-43; 191 NW2d 313 (1971).

Again, "the same ultimate issue" underlying the first action was not involved in the second action. Although plaintiffs did allege that Howard fraudulently induced them to sell their stock in their answer to Howard's complaint in the first suit, plaintiffs alleged much more in their second suit. Besides alleging that Howard fraudulently induced them to sell their stock, plaintiffs alleged that Howard breached his duty in the sale of UCI's assets to CCB in various manners, and requested that the sale be set aside. This was not litigated in the first action; therefore, the court would have erred had it dismissed plaintiffs' complaint.

Finally, in Docket No. 84292, defendants contend that the November 6, 1984, order should be reversed because on August 14, 1984, the date of trial, the court failed to state its findings of fact and conclusions of law as required by GCR 1963,

517.1, now MCR 2.517(A)(1). We find that reversal is not required on that ground. In rendering its August 14, 1984, opinion and November 6, 1984, order, the court made reference to its previous opinions and orders. In those opinions and orders, the court made detailed findings of fact and conclusions of law. We feel that by incorporating those findings and conclusions the court met the requirements of MCR 2.517(A). Moreover, under subsection (4), findings of fact and conclusions of law are unnecessary in decisions on motions. The parties had earlier filed motions for summary disposition, which the court had denied. The order at issue here was a ruling on a motion for summary disposition, and, therefore, MCR 2.517(A) did not apply.

The decision of the trial court is reversed and the case is remanded to the trial court for proceedings consistent with this opinion. We do not retain jurisdiction.