*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

MARK W DOBRONSKI,

Plaintiff-Appellant,

v

TRANSAMERICA LIFE INSURANCE
COMPANY, ANDLEEB SUBHANI, and WILLIAM
JAMES VIDA

Defendants-Appellees.

FOR PUBLICATION
May 25, 2023
9:00 a.m.

No. 360506
Washtenaw Circuit Court
LC No. 21-001062-NZ

Before: M. J. KELLY, P.J., and BOONSTRA and SWARTZLE, JJ.

SWARTZLE, J.

Plaintiff sued defendants on claims of unlawful robocalls and violations of the national do-not-call registry. A key aspect of plaintiff's case turns on the rather banal observation that, in today's society, a mobile phone can be (and often is) used for residential purposes. Neither federal nor state law compels a contrary conclusion, notwithstanding defendants' arguments. With respect to another key matter, whether a person has consented to receive certain marketing calls or has a preexisting business relationship permitting such calls will often be a fact-intensive inquiry. The trial court granted summary disposition to defendants at a very early stage of the litigation, and this was error. Accordingly, we vacate the trial court's grant of summary disposition in all respects except on one count for which there is no private right of action.

## I. BACKGROUND

Beginning in the 1970s and extending into the 1990s and beyond, Michigan and our federal government have enacted laws aimed at "abuses of telephone technology—for example, computerized calls dispatched to private homes." *Sandusky Wellness Ctr, LLC v Medco Health Solutions, Inc*, 788 F3d 218, 221 (CA 6, 2015) (cleaned up). In 1991, "respond[ing] to a torrent of vociferous consumer complaints about intrusive robocalls," calls described by one senator "as the scourge of modern civilization," our federal government enacted the Telephone Consumer Protection Act (TCPA), 47 USC 227, *et seq. Barr v American Ass'n of Political Consultants, Inc*, 591 US __, __; 140 S Ct 2335, 2344; 207 L Ed 2d 784 (2020) (cleaned up). Our own Legislature

-1-

had acted prior to Congress with the Michigan Home Solicitation Sales Act (MHSSA), MCL 445.111, *et seq*. Over the subsequent years and decades, legislative bodies and regulatory agencies have since amended, clarified, and added to these protections.

This lawsuit alleges violations of these federal and state protections against abusive telemarketing practices. In his complaint, plaintiff Mark Dobronski alleges that defendants, Transamerica, a life insurance company; William James Vida, an employee of Transamerica; and Andleeb Subhani, an independent contractor for Transamerica, violated federal and state law by initiating 19 telemarketing communications to plaintiff's mobile phone in 2021 without his consent. Plaintiff, proceeding *in propria persona*, raises six counts under the TCPA, the MHSSA, and the Michigan Telephone Companies as Common Carriers Act (MTCCCA), MCL 484.125. Specifically, plaintiff alleges that defendants: Count I, made unlawful robocalls to his mobile phone in violation of 47 USC 227(b) and 47 CFR 64.1200(a); Count II, made unlawful calls to his mobile phone even though his number was listed on the national do-not-call registry in violation of 47 USC 227(c)(5) and 47 CFR 1200(c)(2); Count III, failed to identify themselves in violation of 47 CFR 64.1200(d)(4); Count IV, failed to transmit caller-ID and contact information for the national do-not-call registry in violation of 47 CFR 64.1601(e); Count V, violated the MHSSA, MCL 445.111a and 445.111b, in ways similar to those in Counts I-III; and Count VI, blocked caller-identification information in violation of the MTCCCA, MCL 484.125. Plaintiff asks for damages of $48,000 as well as injunctive relief.

In lieu of answering, defendants moved for summary disposition under MCR 2.116(C)(8) and (C)(10). In their brief in support, defendants make several arguments, some of which overlap with respect to the various counts. On Counts I, II, and V, defendants argue that plaintiff provided sufficient consent to receive the calls. With respect to Counts II, III, V, and VI, defendants argue that plaintiff's mobile phone does not qualify as a residential phone and therefore the marketing restrictions do not apply to those calls. As to Counts II and V, defendants allege that they had a preexisting business relationship with plaintiff that authorized the calls. Finally, defendants argue that plaintiff failed to state a claim on Count III and that there is no private right of action on Count IV.

In support of their motion, defendants attached two evidentiary exhibits: (1) a "customer service" information sheet; and (2) a privacy notice from 2017. The customer sheet indicates that plaintiff has had a life insurance policy with Transamerica since 1993. The sheet lists a P.O. box address for plaintiff, but no phone number. The privacy notice states that Transamerica collects information about its customers, including name, email, and physical address, but omits any express mention of collecting customers' phone numbers. The privacy notice further states that Transamerica can use customer information to "market products and services." The notice informs customers that they can "opt out" of certain marketing efforts by Transamerica's affiliates.

Plaintiff opposed the motion. In his brief, plaintiff states that he obtained the life-insurance policy through a predecessor company, Commonwealth Life Insurance Company, and not Transamerica. Plaintiff also attached a sworn affidavit to his brief. In that affidavit, he avers that he acquired his current mobile phone number in 2004. He claims that he uses his mobile phone "primarily for personal communications with my family and friends." He continues,

9. At no time have I provided consent, prior express consent, or prior express written consent for Transamerica Life Insurance Company ("TLIC") or anyone acting for and on behalf of TLIC to initiate any telephone call using an automatic telephone dialing system or artificial or pre-recorded voice to my cellular telephone number.

10. My cellular telephone number [XXX-XXX-XXXX] has been listed on the National Do-Not-Call Registry continuously since at least December 9, 2004.

Apart from these exhibits to briefs, no discovery had taken place by the time the trial court held a hearing on defendants' motion.

During the hearing, plaintiff conceded that he had filed approximately 36 prior lawsuits alleging similar violations of federal and state law. The defendants in most of those cases had removed the cases to federal court, and with respect to two of his cases that remained in state court, panels of this Court have subsequently adjudicated two of them. See *Dobronski v NPS, Inc*, unpublished per curiam opinion of the Court of Appeals, issued April 21, 2022 (Docket No. 356617); *Dobronski v United Final Expense Serv, Inc*, unpublished per curiam opinion of the Court of Appeals, issued April 21, 2022 (Docket No. 357057). The trial court observed, however, that there was a dearth of binding precedent on several of the arguments raised by the parties. After hearing the parties' arguments, the trial court ruled in favor of defendants, explaining:

> I'm going to discuss this with—I want to see how many other members of the bench have had this. It sounds like this is an issue that keeps coming up. It seems to me we ought to have one judge assigned to it rather than multiple decisions. I'm saddened that we don't have a decision from the Court of Appeals to give us some guidance, and apparently the federal—you know what? Why don't we just—you know what, sir?

> Actually, Counsel, I'm going to adopt your argument in its entirety and grant your motion. I'd like the Court of Appeals to weigh in on this.

> And if they agree with you, [plaintiff], I am happy to give you a trial.

> So your motion is granted in its entirety. Let's have the Court of Appeals weigh in on these lawsuits, and if you will just state it's granted for that reason, I think in the interest of judicial economy, it would be helpful for the Court of Appeals to tell us the course of action we should be taking as trial judges in these cases. Thank you very much.

The trial court subsequently issued a written order to this effect, stating that defendants' motion for summary disposition was granted "for the reasons stated on the record."

This appeal followed.

## II. ANALYSIS

### A. STANDARD OF REVIEW

-3-

Although defendants moved for summary disposition under both MCR 2.116(C)(8) and (C)(10), the trial court did not indicate under which subrule it granted the motion. Given this, we will review the matter under MCR 2.116(C)(10). *Cuddington v United Health Servs, Inc*, 298 Mich App 264, 270; 826 NW2d 519 (2012).

"We review de novo a trial court's decision to grant or deny a motion for summary disposition." *Sherman v City of St Joseph*, 332 Mich App 626, 632; 957 NW2d 838 (2020) (citations omitted). "Summary disposition [under MCR 2.116(C)(10)] is appropriate if there is no genuine issue regarding any material fact and the moving party is entitled to judgment as a matter of law." *Id.* (quotation marks and citation omitted). We consider the evidence in a light most favorable to the nonmoving party. *Payne v Payne*, 338 Mich App 265, 274; 979 NW2d 706 (2021).

Plaintiff has raised both federal and state claims. Federal and state courts have concurrent jurisdiction over federal-law claims, unless federal law provides for exclusive jurisdiction in federal courts. *Office Planning Group, Inc v Baraga-Houghton-Keweenaw Child Dev Bd*, 472 Mich 479, 493; 697 NW2d 871 (2005). The TCPA explicitly permits state court actions, 47 USC 227(b)(3); 47 USC 227(c)(5), and therefore, state courts have jurisdiction over such claims.

During the hearing on defendants' motion, the trial court lamented the lack of case law interpreting and applying these federal and state laws. The trial court's observation is well-taken, though as we will see, courts have increasingly been grappling with these statutes over the past few years. With respect to Michigan case law, we must follow the rule of law established by our Supreme Court or "a prior published decision of [this Court] issued on or after November 1, 1990, that has not been reversed or modified" by our Supreme Court or a special panel of this Court. MCR 7.215(J). With respect to federal case law, "[a]lthough state courts are bound by the decisions of the United States Supreme Court construing federal law, there is no similar obligation with respect to decisions of the lower federal courts." *Abela v Gen Motors Corp*, 469 Mich 603, 606; 677 NW2d 325 (2004) (citation omitted). With that said, as with any non-binding case law, we can consider the decisions of lower federal courts for their persuasive value, if any. *Id*. at 607.

Statutory interpretation is a question of law which this Court reviews de novo. *Sherman*, 332 Mich App at 632. This standard "also applies to the interpretation of federal statutes and regulations." *In re Velazquez*, ___ Mich App ___, ___; ___ NW2d ___ (2022) (Docket No. 360057); slip op at 2.

## B. ADEQUACY OF THE TRIAL COURT'S DECISION

Plaintiff first argues on appeal that the trial court erred by failing to articulate a rationale for its decision and impermissibly requesting an advisory opinion from this Court. Plaintiff's position is without merit.

At the conclusion of a bench trial, a trial court must make specific findings of fact and separately state its conclusions of law. MCR 2.517(A)(3). In contrast, when resolving a motion for summary disposition, a trial court need not explicitly state any findings of fact or conclusions of law. MCR 2.517(A)(4); see also *Lud v Howard*, 161 Mich App 603, 614; 411 NW2d 792 (1987). In rendering its decision, the trial court expressly adopted defendants' arguments in their entirety, and those arguments were detailed and comprehensive. Thus, the trial court provided

reasoned, binding grounds for its decision that we can review on appeal. As for noting the dearth of direction from appellate courts, there is nothing improper in doing so; in fact, just the opposite—such observations are an integral part of the ongoing clarification and exposition of the law.

## C. RESIDENTIAL TELECOMMUNICATIONS

Moving to the merits of plaintiff's claims, we initially consider the trial court's conclusion that plaintiff is not a user of residential-telecommunications services, which impacts Counts II, III, V, and VI. Whether a mobile-phone user can be considered a residential user is treated a bit differently under federal and state law, so we start with the former.

*1. "Residential Telephone Subscriber" Under the TCPA.* In Counts II and III, plaintiff argues that defendants failed to honor the national do-not-call registry by calling his mobile phone and failed to identify themselves properly, in violation of 47 USC 227(c)(5) and 47 CFR 64.1200(c)(2) and (d)(4). To seek redress under these federal provisions, a plaintiff must show, among other things, that the person qualifies as "a residential telephone subscriber." The TCPA does not define this term, nor do the implementing regulations. "Courts have interpreted the 'residential telephone subscriber' element to require proof that the number called was used for 'residential purposes,' " though, this term is likewise not defined in the statute or regulations. *Stevens-Bratton v TruGreen, Inc*, 437 F Supp 3d 648, 655 (WD Tenn, 2020).

It is undisputed that plaintiff received the calls in question on his mobile phone. Several courts have questioned whether a mobile-phone user can qualify as a residential-telephone subscriber. See *id.* (collecting cases). Indeed, the trial court in this case agreed with defendants and concluded that a mobile-phone user cannot, as a matter of law, qualify as a residential-telephone subscriber for purposes of the TCPA.

The trial court erred in this respect. As noted by the federal district court in *Stevens-Bratton*, the implementing regulations specifically cover this situation. "Forty-seven C.F.R. § 64.1200(e) provides that '[t]he rules set forth in paragraph (c) and (d) of this section are applicable to any person or entity making telephone solicitations or telemarketing calls to wireless telephone numbers to the extent described in the Commission's Report and Order, CG Docket No. 02-278, FCC 03-153, 'Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991.' " *Id.* In that report, "the FCC made clear that 'residential subscriber' can include 'wireless subscriber' because 'it is well-established that wireless subscribers often use their wireless phones in the same manner they use their residential wireline phones.' " *Id.* at 655-656 (quoting Implementing the Tel Consumer Prot Act of 1991, 18 FCC Rcd at 14038-14039). Consistent with this, the federal district court in *Stevens-Bratton* made the common-sense observations that (1) a mobile phone can, as a factual matter, be used for residential purposes, and (2) "[t]he privacy interests [mobile phones] implicate are just as strong as wirelines, perhaps more so." *Id.* at 656.

Defendants do not argue that the FCC's regulations are somehow an impermissible extension of the TCPA. A plain reading of 47 CFR 64.1200(e) confirms that, at least in the view of the FCC, the protections afforded to residential telephone subscribers in 47 USC 227(c)(5) and 47 CFR 64.1200(c)(2) and (d)(4) extend to mobile-phone users who use their devices for residential purposes. We agree with the federal district court's analysis in *Stevens-Bratton* on this

question and adopt it here. *Id*. at 654-656; see also *Hand v Beach Entertainment KC, LLC*, 456 F Supp 3d 1099, 1120 (WD Mo, 2020).

Although we analyze plaintiff's claims through the lens of MCR 2.116(C)(10), we note that the trial court granted summary disposition early in this case, with little to no discovery to-date. Plaintiff did submit an affidavit with his response to defendants' motion in which he claims that he uses his cellular telephone "primarily for personal communications with my family and friends." This sworn statement, however, has not been contested in discovery. Whether a person uses a mobile phone for residential purposes will, in the mine-run of cases, be a fact-intensive question, one not typically answerable at the outset of litigation. See *Peterson Novelties, Inc v City of Berkley*, 259 Mich App 1, 24-25; 672 NW2d 351 (2001). Accordingly, the trial court erred in granting summary disposition to defendants on Counts II and III with respect to whether plaintiff's use of a mobile phone could qualify him, if factually supported, as a residential-telephone subscriber.

Separately with respect to Count III, defendants maintain that plaintiff has failed to plead a claim under MCR 2.116(C)(8). This argument is without merit. Michigan is a notice-pleading jurisdiction. MCR 2.111; *Veritas Auto Machinery, LCC v FCA Int'l Operations, LLC*, 335 Mich App 602, 615; 968 NW2d 1 (2021). Plaintiff has adequately put defendants on notice of his claim that they violated 47 CFR 64.1200(d)(4); moreover, on remand, plaintiff will have an opportunity to amend his complaint, if necessary. MCR 2.118(A).

*2. "Residential Telephone Service" Under the MHSSA*. The trial court similarly dismissed plaintiff's Count V under the MHSSA because plaintiff did not have "residential telephone service" through his mobile device. Under the MHSSA, a telephone solicitor is prohibited from making (1) a robocall to a "residential telephone subscriber," or (2) a telephone solicitation to a "residential telephone subscriber" listed on the national do-not-call list. MCL 445.111a(5). The MHSSA defines the term "residential telephone subscriber" or "subscriber" as "a person residing in this state who has *residential telephone service*." MCL 445.111(l) (emphasis added). The phrase "residential telephone service" is not defined in the MHSSA.

For reasons similar to those related to the TCPA, we conclude that "residential telephone service" under the MHSSA can, if the facts warrant, include service on a mobile device. There is nothing in the MHSSA limiting "residential telephone service" to a particular type of communications provider. As Judge Maloney of the Western District of Michigan observed when rejecting a similar argument, "The statute does not distinguish solicitations over a cellular telephone service from solicitations over a wireline service . . . No language in the statute limits 'residential telephone service' to service over a wire, as opposed to service over a cellular network." *Visser v Caribbean Cruise Line, Inc*, unpublished opinion of the United States District Court for the Western District of Michigan, issued January 27, 2020 (Case No. 1:13-cv-1029), p 13.

Rather, the relevant limiting term in the statute is "residential," i.e., the location of the user. This is consistent with other provisions of the MHSSA, which prohibit certain telephone solicitations to "a *residence* of the buyer." MCL 445.111(a) (emphasis added). In fact, the statute does not prohibit similar solicitations to a "business establishment," MCL 445.111(a)(iv), further confirming that our Legislature intended to focus the protections on the place where the call was

-6-

received, and not necessarily on the type of device used by the subscriber. Indeed, as Judge Maloney further observed, "An individual who receives a solicitation to his cellular telephone, while located at his residence, is just as vulnerable as an individual who receives a solicitation to his home phone over a landline." *Visser*, unpub op at 13. In concluding otherwise, the trial court erred.

*3. "Residential Telephone Service" Under the MTCCCA.* In Count VI, plaintiff asserts a violation of section 25 of the MTCCCA. There is scant case law interpreting MCL 484.125; in fact, the only decision citing the provision was an earlier one involving the same plaintiff and same panel of this Court. *United Final Expense Servs*, unpub op at 1. In that earlier case, this Court did not have occasion to address the substance of the statute.

Section 25 used to be part of a robust, comprehensive act regulating the telephone industry in this state. Today, however, the MTCCCA has been almost completely hollowed out; in fact, only section 25 remains. See, e.g., 1991 PA 179 (repealing MCL 484.101 to MCL 484.114; MCL 484.119 to MCL 484.124; and MCL 484.126); 1987 PA 5 (repealing MCL 484.115 to MCL 484.118).

While similar *policy* arguments would support extending the protections of the MTCCCA to mobile-phone users, the text of the statute is materially different than the TCPA or MHSSA. And, it is the text of a statute, not policy arguments, that this Court is bound to follow when construing and applying a statute. *D'Agostini Land Co, LLC v Dep't of Treasury*, 322 Mich App 545, 600-601; 912 NW2d 593 (2018).

Like the TCPA and MHSSA, MCL 484.125 protects certain persons (called "subscribers") from robocalls or calls made with disabled caller-ID. The section has its own set of definitions, however, and does not rely on those found in the TCPA or MHSSA. Relevant here, "subscriber" is defined under the MTCCCA as "an individual who has subscribed to residential, business, or toll-free telephone service from a telephone company regulated by this state, and all other persons with the same legal residence as the subscribing individual." MCL 484.125(1)(d).

Several problems are evident. First, there is no definition of "residential . . . telephone service." Second, and critically for this appeal, there is nothing in the statute defining or otherwise indicating what constitutes a "telephone company regulated by this state." *Id.* It is not immediately clear from the statute, for example, whether a provider of mobile-phone service would qualify as a "telephone company regulated by this state." Similarly, a brief review of the Michigan Telecommunications Act, 1991 PA 179, MCL 484.2101 to MCL 484.2684, does not provide an immediate answer, even when one recognizes that it was this act that repealed most of the MTCCCA. As one of the administrative bodies that regulates telecommunications services in the state, our Public Services Commission has oversight primarily of traditional landline-phone service. See "Telecommunications", https://www.michigan.gov/mpsc/about/telecommunications (accessed May 15, 2023).

The trial court did not grapple with the specific definition of "subscriber" under the MTCCCA. Likewise, the parties give the MTCCCA claim somewhat short shrift on appeal, at least with respect to whether the term "subscriber" covers a mobile-phone user. Given the paucity of case law and legal argument, we are hesitant to resolve this question as a matter of law so early

in the litigation without the question being subject to "the crucible of the adversarial process." *In re Casto*, __ Mich App __, __; __ NW2d __ (2022) (Docket No. 357656); slip op at 13.

With respect to defendants' separate argument that plaintiff's MTCCCA claim fails because plaintiff did not allege that the calls were made with "a telephone line," MCL 484.125(2), the argument is without merit. Plaintiff's allegations provide sufficient notice that he is asserting a violation of section 25 of the MTCCCA based on identified calls by defendant. The factual basis for establishing whether defendants made (or caused to be made) the calls using "a telephone line" lies entirely in defendants' hands, thus precluding a detailed set of allegations on that matter at the outset of the lawsuit.

### D. CONSENT/ESTABLISHED BUSINESS RELATIONSHIP

Defendants next argue that, regardless of whether mobile phones can be used for residential purposes, plaintiff did, in fact, consent to receive the marketing calls with respect to Counts I, II, and V. Defendants correctly point out that the TCPA, MHSSA, and MTCCCA each provide a caller with an exception to the laws' prohibitions based on the notion of user consent. See TCPA, 47 USC 227(a)(4), 47 CFR 64.1200(a)(2); MHSSA, MCL 445.111a(5); MTCCCA, MCL 484.125(2)(a)(*i*). While the types and forms of consent vary, generally speaking, if a user expressly consents to being contacted, then such contact can be made, even at a person's residence. Whether adequate consent was given will often be a fact-intensive inquiry.

The parties spill much digital ink on whether a particular consent needed to be in writing. We need not get into the various forms of consent, however, because even under the most lax version, there remain questions of fact on whether plaintiff consented to particular calls.

The factual record on plaintiff's purported consent has barely been developed. Plaintiff alleges in a sworn affidavit that he did not consent, while defendant purports to show otherwise. Defendants' evidence of consent, however, is not sufficient at this stage of the litigation to foreclose plaintiff from going forward. Defendants point to a customer sheet that identifies plaintiff as a holder of a Transamerica life-insurance policy, but plaintiff responds that he obtained the policy through a predecessor life-insurance company. While a customer's consent to be contacted could very well survive a corporate acquisition or asset purchase, this would be at least a mixed question of law and fact, and defendants' proof of consent is simply deficient. Thus, the mere fact that plaintiff's name appears on a customer-information sheet, by itself, says nothing about any consent to be contacted by means of telecommunications.

Moreover, the current record shows that, subsequent to the life-insurance policy, plaintiff obtained his current mobile-phone number in 2004, and he almost immediately placed that number on the national do-not-call registry. Thus, even if plaintiff arguably gave consent at some point, there is evidence in the record to suggest that he subsequently revoked that consent. As for the written notice in 2017, even if plaintiff did receive a copy of it, the notice does little to show that plaintiff affirmatively consented to receive marketing calls in 2021. At this early stage, there remains a genuine issue of material fact with regard to consent.

Relatedly, the existing record is too nascent to determine whether plaintiff terminated a business relationship with defendants for purposes of the TCPA, see 47 CFR 64.1200(f)(5), or

whether plaintiff is an "existing customer" as that term is used in the MHSSA, see MCL 445.111(j). Defendants might well be able to establish that plaintiff was, in fact, an existing customer with the type of business relationship with defendants that is exempted from the prohibitions set forth in the TCPA or MHSSA. But, these and other factual matters will need to be established with evidence developed during discovery.

## E. PRIVATE RIGHT OF ACTION UNDER 47 CFR 64.1601(E)

Finally, plaintiff argues that the trial court erred by granting defendants' motion for summary disposition on Count IV of plaintiff's complaint. In his view, 47 CFR 64.1601(e) provides for a private right of action, contrary to the trial court's decision.

"Federal regulations in and of themselves cannot create a private cause of action unless the action is at least implied from the applicable statute." *Parry v Mohawk Motors of Mich, Inc*, 236 F3d 299, 309 (CA 6, 2000). 47 CFR 64.1601(e) was adopted by the FCC, and was promulgated pursuant to 47 USC 227 and the Do-Not-Call Implementation Act, Public Law 108-10. *In re Rules & Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18 FCC Rcd 14014, ¶¶ 35–36 (FCC June 26, 2003).

There is no express private right of action under 47 CFR 64.1601(e), and the regulation does not identify the particular statutory provision under which it was promulgated. Courts do not lightly infer a private right of action where the statutory basis for one is unclear. See *Randall v Mich High Sch Athletic Ass'n*, 334 Mich App 697, 718-719; 965 NW2d 690 (2020). This is especially the case when, as here, the legislative body "has provided other means for enforcing a statute's provisions." *Id.* at 718.

Michigan courts have not yet addressed this question in a published decision, though courts outside this jurisdiction have. Most courts have concluded that there is no private right of action with respect to 47 CFR 64.1601(e) because the regulation appears to have been promulgated under 47 USC 227(d), which does not include a private right of action. See, e.g., *Dobronski v Selectquote Ins Servs*, 462 F Supp 3d 784, 789-790 (ED Mich, 2020); *Worsham v Discount Power, Inc*, unpublished opinion of the United States District Court for the District of Maryland, issued January 6, 2021 (Case No. RDB-20-0008). At least one court has disagreed, however, and concluded that there is a private right of action because the regulation was likely promulgated under 47 USC 227(b) and (c), and these statutory provisions do provide for a private right of action. *Worsham v LifeStation, Inc*, unpublished opinion of the Court of Special Appeals of Maryland, issued November 17, 2021 (Case No. 661). Both lines of cases recognize, however, that the answer is not without doubt. Compare *Selectquote Ins*, 462 F Supp 3d at 790 (framing its ruling in terms of "just as likely" and "appears to *support*") with *Worsham*, unpub op at 17 (Case No. 661) (explaining that the question "is not free from doubt and the lines between regulations authorized by § 227(c) and (d) (or, perhaps, some combination of both) could be far clearer").

Having reviewed the statutes, regulations, and relevant case law, we conclude that there is no private right of action with respect to 47 CFR 64.1601(e). First and most critically, there is nothing in the statute that clearly indicates that Congress intended for private lawsuits to enforce caller-ID requirements. Subsection (b) prohibits certain prerecorded robocalls, and subsection (c) provides for various do-not-call protections. The caller-ID regulation does not fit squarely within

either of these subsections, either conceptually or technically. Second and relatedly, when promulgating 47 CFR 64.1601(e), the FCC did not indicate that either subsection (b) or (c) was the statutory authority for that regulation. Had there been an intent to create a private right of action by Congress, or an understanding by the FCC that Congress had so intended, then one would expect more clarity in the statute or regulation, especially when private rights of action were expressly created elsewhere in the federal scheme. If a statute and its implementing regulations have expressly created a private right of action in one section, but have not expressly done so elsewhere, then it is "highly improbable" that Congress and the FCC "absentmindedly forgot to mention an intended private action." *Transamerica Mtg Advisors, Inc v Lewis*, 444 US 11, 20; 100 S Ct 242; 62 L Ed 2d 146 (1979).

Third, we find persuasive the reasoning of the court that appears to have first grappled with this question, *Worsham v Travel Options, Inc*, unpublished opinion of the United States District Court for the District of Maryland, issued September 2, 2016 (Docket No. 14-2749). In that case, the federal district court similarly rejected the argument that the caller-ID regulation must have been promulgated under 47 USC 227(b) or (c), observing that neither section appears to "require[] the use of such technology to accomplish their respective purposes." *Id.* at 4. Rather, as the court explained,

> It seems just as likely that the FCC may have only intended to ensure consistency between its preexisting Caller ID regulations and its revised TCPA regulations and/or the FTC's regulations pertaining to telemarketing when the FCC promulgated § 64.1601(e); those efforts all occurred at the same time, in 2003. Additionally, the FCC said, "Caller ID requirements will improve the ability of consumers to identify and enforce do-not-call rights against telemarketers." 68 Fed. Reg. at 44,156. Therefore, the FCC's rule in § 64.1601(e) appears to *support* consumers' enforcement efforts under the TCPA's subsection *c*, rather than to *create* a separate mechanism upon which a consumer can make an actionable claim. [*Id.*]

The conclusion that 47 CFR 64.1601(e) merely "supports" the protections of 47 USC 227(c), rather than creates a new enforcement mechanism for that subsection, implies that the regulation was likely promulgated under 47 USC 227(d), which similarly has technical requirements that support substantive protections found in other parts of the TCPA. This is how most courts have read 47 CFR 64.1601(e) in similar cases. See, e.g., *Dobronski v Selectquote Ins Servs*, 462 F Supp 3d 784, 790 (ED Mich, 2020).

As the state appellate court in Maryland observed, this conclusion is not without doubt. *Worsham*, unpub op at 17 (Case No. 661). Forty-seven CFR 64.1601(e) applies to live telemarketing calls, not just prerecorded ones, and 47 USC 227(d) is focused on the latter, not the former. Thus, arguably the scope of 47 CFR 64.1601(e) extends beyond the strictures of subsection (d), as that court noted. *Id.* at 16-17. But, with that said, subsection (d) provides technical support for other, substantive provisions of the statutory and regulatory scheme, and 47 CFR 64.1601(e) likewise appears to have a similar "support" function, as explained by the FCC when it published the regulation.

-10-

Fourth and finally, a private right of action is not the only, or even the primary, enforcement mechanism under the TCPA. The FCC and state attorneys general can, and do, bring regulatory and judicial actions to enforce the TCPA and promulgated regulations. See 47 USC 227(f)(1),(3).

For all of these reasons, we conclude that there is no private right of action to enforce 47 CFR 64.1601(e). The trial court did not err by granting summary disposition to defendants on Count IV.

### III. CONCLUSION

Accordingly, as explained in this opinion, (1) we affirm the trial court's grant of summary disposition on Count IV of plaintiff's complaint, and (2) we otherwise vacate the trial court's grant of summary disposition on Counts I, II, III, V, and VI of that complaint. Nothing here should be read to preclude defendants from challenging one or more of plaintiff's counts with a motion for summary disposition under MCR 2.116 after the parties have had sufficient opportunity for discovery. We do not retain jurisdiction.

/s/ Brock A. Swartzle
/s/ Michael J. Kelly
/s/ Mark T. Boonstra